**Dario Ramiro ACEVEDO, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–06–00098–CR.**

Court of Appeals of Texas,
San Antonio.

Jan. 30, 2008.

Discretionary Review Refused
Aug. 20, 2008.

Jimmy Parks, Jr., Law Offices of Jimmy Parks, Jr., Suzanne M. Kramer, San Antonio, TX, for Appellant.

E. Bruce Curry, District Attorney, M. Patrick Maguire, M. Patrick Maguire, P.C., Kerrville, TX, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

Appellant Dario Acevedo was convicted by a jury for the murder of Jeffrey Donofrio. The trial court assessed punishment at life imprisonment. On appeal, Acevedo presents several issues, including erroneously admitted evidence. Because we conclude that the trial court abused its discre-

tion in admitting the testimony of the State's expert Dr. Michael Arambula, and cannot say such testimony did not affect a substantial right, we reverse the judgment of the trial court and remand this matter for proceedings consistent with this opinion.

## FACTUAL BACKGROUND

In March of 2005, Appellant Dario Acevedo lived at Cascade Caverns ("the Caverns") with his girlfriend, Jill Beardsley, a co-owner of the property. On March 2, 2005, Jill died of an accidental aspirin overdose. Following Jill's death, James Kyle, the other Caverns' owner, asked Acevedo to move from the property. On March 19, 2005, Acevedo, Kyle, Jeffrey Donofrio, and James Mason were working on electrical boxes at the Caverns. The men spread out, Kyle and Mason at separate posts, and Acevedo remained alone with Donofrio. Shortly thereafter, Donofrio was fatally shot, but Acevedo claimed the shooting was accidental.

Evidence of the relationship between Acevedo and Donofrio is meager. The two were acquaintances, but there is no evidence of any ill will between the two. At trial, the State focused on Acevedo's actions immediately before and after the shooting to establish his intent to kill Donofrio. Prior to the shooting, Acevedo appeared upset with Kyle's request that Acevedo leave the property and take all of the couple's cats. According to Kelly Beardsly, Jill's sister, the night before the shooting, Acevedo told her he was afraid he had ingested "too much" methamphetamine. The afternoon of the shooting, Acevedo was observed carrying a canvas case containing a firearm. When asked why he had the firearm, Acevedo stated,

"I'm going to get me a couple of cats." [1] After the shooting, Acevedo claimed he was "just messing around with [the gun] ... [and] was going to do some target shooting." Following the shooting, Mason called 911. Because he did not know the address of the Caverns, Mason handed the phone to Acevedo, who disconnected the call. Witnesses further described Acevedo as slowly "shuffling" to the front gates and failing to open the doors wide enough for an ambulance to enter.

Acevedo did not testify at trial. Instead, through cross-examination, defense counsel presented Acevedo's defensive theory that the shooting was accidental, possibly due to the firearm being dropped. Although Acevedo asserts multiple issues on appeal, we limit our opinion to the issues of expert testimony.

## EXPERT TESTIMONY

■ Acevedo argues the trial court erred in admitting the expert testimony of (1) Dr. Michael Arambula regarding the possible effects of methamphetamine use on Acevedo and (2) Investigator Luther Van Landingham regarding the latent prints and gunshot residue evidence. We review the trial court's determination regarding expert qualifications and the admission of expert testimony under an abuse of discretion standard of review. *Lagrone v. State*, 942 S.W.2d 602, 616 (Tex.Crim.App.1997).

### A. Dr. Michael Arambula

During the trial, Kelly testified that Acevedo confided in her, the day before the shooting, regarding his use of crystal methamphetamine saying it helped him "focus." She testified that he told her "I have taken some and I think I have taken

---

1. Mason testified regarding Acevedo having to "get rid" of many of the cats owned by Acevedo and Jill Beardsley. However, because some of the cats were sick, Mason and Acevedo discussed the fact that at least some of the cats were going to have to be euthanized.

too much." No further details regarding the drug use were offered. The defense cross-examined Kelly regarding her lack of knowledge on when the drug was taken, how the drug was ingested, and how much was taken.[2] The State subsequently called Dr. Michael Arambula, a psychiatrist and pharmacist, to testify regarding the effects of crystal methamphetamine. After establishing Arambula's expertise, the State proceeded to question Arambula using hypothetical questions:

> STATE: Hypothetically, if an individual uses too much methamphetamine at approximately 8:00 or 9:00 p.m., would he still have the methamphetamine in his system the next day, March 19th, at approximately 4:00 p.m.?
>
> ARAMBULA: Probably.

Arambula testified that a "hypothetical individual" taking a hypothetical 1,000 milligrams of methamphetamine, a "street dose," would have 500 milligrams in his system fifteen hours later. Arambula then testified regarding the effects of methamphetamine on the hypothetical user's body and mind, including outward signs of methamphetamine use. Arambula listed several effects of crystal methamphetamine on the user: a feeling of alertness; possible anxiety and impulsiveness; mood instability; and possible aggressiveness. He further described "mood instability" as "feeling good and then switch[ing] quite rapidly, depending on what the circumstances are and the situation that they're in."

Arambula explained that the visibility of these effects would vary from person to person, depending on "the dose ... and how often the person has been taking it,

[and] how accustomed they are to the amount of drug that they are taking." If a person "has already used [methamphetamine] before or if the dose is not too high," the outward signs of use might be minimal. Arambula admitted that he did not know how much Acevedo ingested and never treated Acevedo. At the conclusion of Arambula's testimony, the defense objected and moved to strike Arambula's testimony as lacking probative value, being irrelevant, and for failing to apply the facts of the case. The trial court denied the motion.

## 1. Waiver

The State contends Acevedo waived his complaint about the testimony of Arambula by not objecting to the reliability of Arambula's testimony until after cross-examination, rather than at the time Arambula testified on direct. To preserve error for appellate review, the complaining party must make a timely and specific objection at the earliest possible opportunity. Tex.R.App. P. 33.1; *Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App.1995). A specific objection regarding expert testimony must detail the particular deficiency in the expert's qualifications or the reliability of the expert's opinions. *See Chisum v. State*, 988 S.W.2d 244, 250 (Tex.App.-Texarkana 1998, pet. ref'd).

Here, Acevedo specifically objected to the reliability of Arambula's testimony following cross-examination, during which Arambula testified that he had no idea how much methamphetamine Acevedo took, he had never seen Acevedo, that he was retained the evening before he testified and notably "as far as this case ... I'm here hypothetically."[3] After Acevedo's attor-

---

2. Acevedo's trial counsel objected to Kelly's testimony arguing the same was evidence of an extraneous offense. Because Kelly's testimony was conditionally admitted based on Arambula's testimony, and we have deter-

mined Arambula's testimony was improperly admitted, we do not further address the admission of Kelly's testimony.

3. Defense counsel made a variety of objections during Arambula's direct examination

ney cross-examined Arambula, he lodged the following objection:

> Judge, at this time we would move to strike Dr. Arambula's testimony as not being probative or relevant to anything in this case. He testified to hypotheticals and had no information based on the testimony as to how to even couch the dates or times or use of the methamphetamine, so it was a hypothetical that was purely speculative, not even based on general facts where he could testify to a reasonable degree of medical certainty that there was methamphetamine in his system at the time.

> He did not testify to any reasonable degree of medical certainty, nor did he give any testimony that [Acevedo], based on the testimony of this case or anything he knew about this case, had meth in his system at 4:00 o'clock on March 19th of 2005.

An objection of unreliability based on lack of facts or data is distinct from an objection based on an expert's lack of qualifications and each should be evaluated independently. Although the Court of Criminal Appeals and other appellate courts have addressed the timeliness of objections involving qualification in prior criminal cases, we have not found a case involving the timeliness of an objection to the expert's reliability.

Texas Rule of Evidence 705(a) provides that "[t]he expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data" that support his opinion. TEX.R. EVID. 705(a). Here, the complete absence of underlying facts and data for Arambula's testimony on direct were only made known during cross-examination. Arambula was retained by the State the night before his appearance.

Thus, defense counsel was unaware of the substance of his testimony. During cross-examination, defense counsel solidified that, other than Kelly's comment, Arambula had no underlying data or information regarding Acevedo or his methamphetamine use. Because Acevedo's counsel objected after Arambula's testimony, and nothing prevented the State from either responding to the objection or recalling Arambula, we conclude the defense's objection following cross-examination was timely.

### 2. Analysis

■ Acevedo's objections to Arambula's testimony are essentially based on the requirements of Texas Rule of Evidence 702. The trial court may admit expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." TEX.R. EVID. 702. For the testimony to be admissible, the proponent of expert testimony must establish: (1) the expert is qualified to render an opinion on the subject matter and (2) the testimony is relevant and based on a reliable foundation. *Id.; E.I. du Pont de Nemours and Co., Inc. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995). The proponent of the scientific evidence has the burden of demonstrating by clear and convincing evidence that the evidence is reliable. *Jackson v. State,* 17 S.W.3d 664, 670 (Tex.Crim. App.2000).

■ Because Arambula's qualifications were not at issue, we need only address his testimony's relevance to the issues in the case and its reliability. In this case, these two concepts are intertwined. Arambula's unsubstantiated testimony is both unreliable and irrelevant. Expert testimony is

including an objection based on lack of notice, the speculative nature of Arambula's testimony and Arambula's inability to testify based on reasonable medical probability.

unreliable if it is not grounded "in the methods and procedures of science" and is no more than "subjective belief or unsupported speculation." *Robinson*, 923 S.W.2d at 557 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

■ In evaluating expert testimony, the trial court must "assess whether the expert made an adequate effort to tie the relevant facts of the case to the scientific principles about which he testified." *Morales v. State*, 32 S.W.3d 862, 866 (Tex. Crim.App.2000). If the expert does not tie the facts to his expert testimony, the testimony is neither helpful nor admissible. *See Griffith v. State*, 983 S.W.2d 282, 287–88 (Tex.Crim.App.1998); *see also Rousseau v. State*, 855 S.W.2d 666, 686 (Tex. Crim.App.1993).

Acevedo claims Arambula's testimony was speculative and therefore, irrelevant and unreliable because it was not sufficiently tied to the facts of the case. Several courts have found expert testimony speculative and unreliable when the testimony is not sufficiently tied to the facts of the case. In *Mata v. State*, 46 S.W.3d 902, 915–17 (Tex.Crim.App.2001), the court examined the science of retrograde extrapolation, a technique used to estimate the level of blood alcohol content at the time of an intoxication offense. In its analysis, the *Mata* court made clear that the expert's testimony "must be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* at 908. The expert's testimony in *Mata* was unreliable in part because the expert did not know a single personal characteristic of Mata from which to calculate blood alcohol content. *Id.* at 917. The expert was unaware of Mata's weight, what he had eaten or the time of his last drink. *Id.*

Likewise, in *DeLarue v. State*, 102 S.W.3d 388, 400–02 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd), the reliability of the State's evidence pertaining to the presence of marijuana in DeLarue's system at the time of the accident in question was at issue. The court noted that the failure to extrapolate a controlled substance to the time of the accident could render the evidence insufficient under a Rule 403 analysis. *Id.* at 401. The court further explained that "no attempt was made to *quantify* the presence; no attempt was made to show *when* the marijuana was introduced into his system; no attempt was made to show appellant was 'under the influence' of the marijuana at the time of the accident; and no attempt was made to show causation between appellant's behavior and the presence of marijuana in his system." *Id.*

In the present case, much like the experts in *Mata* and in *DeLarue*, Arambula did not tie the science to the facts of this case. Arambula testified that he did not know *any* of the particular facts of this case. More specifically, Arambula possessed no information regarding: how much, or precisely what, Acevedo ingested and when; Acevedo's individual characteristics at the time of the incident; Acevedo's previous drug use, his tolerance for methamphetamine; or what Acevedo may have eaten during the previous twenty-four hours. Arambula's use of hypotheticals unrelated to the facts negates the probative value of his testimony.

We conclude Dr. Arambula's testimony was merely speculative and, thus unreliable and irrelevant. An expert testifying to the effects of methamphetamine on a given individual must know more about the individual and quantity ingested than evidenced by Arambula's testimony. Accordingly, we conclude the trial court abused its discretion in admitting Arambula's tes-

timony because it was unreliable and irrelevant to the case at bar.

### 3. Harm

In accordance with Rule 44.2(b), our analysis of the harm associated with the erroneous admission of expert testimony considers everything in the record, including the evidence admitted, the jury instructions, the State's theory, defensive theories, closing arguments, and voir dire. *Motilla v. State*, 78 S.W.3d 352, 356 (Tex. Crim.App.2002). Important factors are "the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.* at 355. More specifically, the reviewing court should consider whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert. *Id.* at 356.

Here, Acevedo's defense rested on whether the shooting was an accident. The record contains no testimony regarding a conflict between Acevedo and Donofrio. Acevedo's defense was that the shooting was an accident. It is noteworthy that although a prosecutor ordinarily need not prove motive as an element of a crime, the absence of an apparent motive may make proof of the essential elements of a crime less persuasive. *See Reid v. State*, 964 S.W.2d 723, 730 (Tex.App.-Amarillo 1998, pet. ref'd) (determining that expert testimony on Munchausen Syndrome by Proxy was relevant in murder trial to explain mother's alleged conduct and show mother's motive for allegedly causing death of infant child). Such is the present case. Based on the information before the jury, the murder ascribed to Acevedo was difficult to explain and gave his accident defense some credibility. As such, Arambula's testimony of Acevedo's

drug use would, if accepted by the jury, bridge that gap.

During its closing argument, the State spent considerable time arguing that Acevedo was under the influence of methamphetamine at the time of the shooting. The State argued that Arambula's testimony supplied the motive for the murder. Specifically, the State argued:

> Dr. Arambula came in to tell you about the effects of meth, and I called him because most of you probably have—are not familiar with methamphetamine and because you needed to know what the effects of this methamphetamine are, because [defense counsel] says, 'But there's not motive.' Well, I think Dr. Arambula explains that. People are irritable, they're aggressive, they do things without thinking. That's why you take a gun out and you kill somebody when there's other people around, but, you know, you're not thinking real clearly, so you wait until they're gone.... That explains it. The methamphetamine use explains it,....

The State clearly emphasized Arambula's testimony to the jury. Arambula was the only witness to testify regarding the effects of methamphetamines and that Acevedo possibly had methamphetamines in his system at the time of the murder. After examining the entire record, we cannot say that Arambula's testimony "did not influence the jury, or had but a slight effect" and thus did not affect Acevedo's substantial rights. TEX.R.APP. P. 44.2(b). We therefore sustain this appellate issue.

Although this issue is dispositive, we address additional issues raised by Acevedo that are capable of repetition. TEX. R.APP. P. 47.1.

### B. Investigator Van Landingham

On appeal, Acevedo also asserts the trial court abused its discretion by admitting

the expert testimony of Investigator Luther Van Landingham regarding gunshot residue and fingerprint analysis because he was unqualified and his testimony was in violation of the Confrontation Clause.

### 1. Qualifications

 Acevedo objected to the testimony of Van Landingham regarding the gunshot residue ("GSR") report. The testimony, however, was no more than reading a report already in evidence. Prior to the admission of the GSR report, defense counsel's sole objection was that the GSR report contained a "conclusory averment." The trial court admitted the GSR report, and limited Van Landingham's testimony to the contents of the report. In this case, Van Landingham only testified that the GSR report contained certain statements (the absence of gunshot residue) and did not provide any additional opinion testimony regarding the "science" of gunshot residue. Once admitted into evidence, a party may read the document into evidence. *Wheatfall v. State*, 882 S.W.2d 829, 837–38 (Tex.Crim.App.1994). Simply reading from a report already admitted into evidence is not providing opinion testimony. *Id.* Acevedo simply mischaracterizes Van Landingham's testimony regarding the gunshot residue. Van Landingham did not offer expert testimony relating to the science of gunshot residue and the trial court did not abuse its discretion in allowing Van Landingham to confirm the contents of the GSR report. We now turn to the latent print report and Van Landingham's testimony regarding latent prints.

Van Landingham testified that the latent prints report substantiated that "[n]o latent prints evidence suitable for identification [was] developed." Upon defense objection that Van Landingham was not qualified as an expert, the following transpired:

State: Okay, and does no suitable latent prints meant that there with (sic) no prints whatsoever on an item?

Van Landingham: I would have to refer to hypothetical, crime scenes that I have—

(Defense objection regarding qualifications overruled by the trial court.)

State: Approximately how many times have you, yourself, personally lifted latent prints at (sic) crime scene.

Van Landingham: Several hundred times.

State: Have you had training in that area?

Van Landingham: Yes.

State: Okay. Just briefly describe for the jury your training?

Van Landingham: Well, when I started this job, I was—I was given training at the—in the academy. I have had about—three years ago we went to an in-service class on identifying fingerprints, not necessarily classifying fingerprints, but identifying fingerprints.

Van Landingham's testimony exhibited his training and experience with regard to collecting fingerprint evidence. *See Matson v. State*, 819 S.W.2d 839, 851–52 n. 10 (Tex.Crim.App.1991) (confirming that "[n]o rigid formula exists for determining whether a particular witness is qualified to testify as an expert. A witness may be qualified by reason of knowledge, skill, experience, or training, regardless of its source."); *Wilson v. State*, 195 S.W.3d 193, 200 (Tex.App.-San Antonio 2006, no pet.) (noting that Rule 702 does not provide a bright line test as to whether expert testimony is admissible). Van Landingham's testimony was limited to the characteristics necessary for suitable identification, including why a particular individual may not leave suitable prints. As someone trained and experienced in lifting latent

fingerprints, Van Landingham's area of expertise included knowledge of the characteristics of a fingerprint and what makes certain prints more suitable for analysis. Accordingly, we are unable to conclude that the trial court abused its discretion in admitting Van Landingham's testimony.

### 2. Confrontation Clause

Acevedo contends the trial court's admission of hearsay statements denied him the opportunity to confront witnesses against him. Acevedo specifically asserts that the admission of the GSR report and the latent print report violated his right to confrontation.

■■■ The United States and Texas Constitutions guarantee an accused the right to be confronted with the witnesses against him. U.S. Const. amend. VI; Tex. Const. art. I, § 10; *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). We review alleged violations of the Confrontation Clause de novo. *See Wall v. State,* 184 S.W.3d 730, 742–43 (Tex. Crim.App.2006).

■■■ The Confrontation Clause bars the admission of testimonial statements of a witness not appearing at trial unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine him. *Crawford v. Washington,* 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Generally, a statement is considered "testimonial" if it is a "solemn declaration made for the purpose of establishing some fact." *Russeau v. State,* 171 S.W.3d 871, 880 (Tex.Crim.App. 2005).

In *Crawford,* the Supreme Court stated that there were various formulations of the core class of "testimonial" statements, which included: (1) *"ex-parte* in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the de-

fendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorily," (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354. More recently, the Supreme Court held statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 2273–74, 165 L.Ed.2d 224 (2006). Here, the reports were prepared as a result of an alleged crime and would be available for use at a later trial. Thus, the reports implicate the common nucleus of the various formulations provided in *Crawford.*

### a. The Reports

■■ Both the GSR and the latent prints reports to which Van Landingham testified were prepared by a person who did not appear at trial. During cross-examination, defense counsel marked both reports as exhibits, but did not offer either report into evidence. On redirect, the State offered the reports into evidence. With regard to the latent print report, the defense argued the report contained a "conclusory averment that is highly prejudicial" (the report indicated the incident was a homicide) and denied Acevedo an opportunity to cross-examine the report's author. When the State offered the GSR report, Acevedo did not raise a Confrontation Clause objection, only that the report contained the same "conclusory averment."

■ To preserve denial of a right to confrontation error, one must specifically object based on the Confrontation Clause. *Holland v. State*, 802 S.W.2d 696, 700 (Tex. Crim.App.1991); *Deener v. State*, 214 S.W.3d 522, 527 (Tex.App.-Dallas 2006, pet. ref'd). Because Acevedo's trial objection regarding the GSR report was not based on a violation of the Confrontation Clause, no error is preserved. Tex.R.App. P. 33.1. We, therefore, address only the latent print report.

**b. Testimonial in Nature**

■ The State argues that because autopsy reports have been admissible as nontestimonial statements, the latent print report is similarly nontestimonial. We disagree. Unlike an autopsy report which contains "matters observed pursuant to a duty imposed by law" and are therefore considered nontestimonial for *Crawford* purposes, the primary purpose of the latent print report was to establish or prove past events potentially relevant to later criminal prosecution. *Grant v. State*, 218 S.W.3d 225, 230–31 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd) (reiterating that "the difference between testimonial and non-testimonial statements [is] dependent in part on the extent to which the statements are a sterile recitation of facts or a subjective narration of events related to the appellant's guilt or innocence"); *Moreno Denoso v. State*, 156 S.W.3d 166, 180 (Tex.App.-Corpus Christi 2005, pet. ref'd) (recognizing that "medical examiners are not considered 'other law enforcement personnel' under Rule 803(8)(B) as far as their duties relate to the preparation of autopsy reports."). Thus, although the report does not accuse Acevedo of wrongdoing, it potentially provided factual evidence to support his conviction. We, therefore, conclude the latent print report is testimonial in nature. *See Russeau*, 171 S.W.3d at 880–81 (holding jailers' reports were testimonial in nature and violated the defendant's constitutional rights). Because the author of the report was unavailable at trial and Acevedo had no prior opportunity to cross-examine him, the Confrontation Clause barred its admission and the trial court erred in admitting the same.

**c. Harm**

■ Denying a defendant's right to confront witnesses is constitutional error and an appellate court must reverse the conviction absent a determination, beyond a reasonable doubt, that the error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a); *see also Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex.Crim.App. 2000). "We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would likely encourage the State to repeat it with impunity." *Wimbrey v. State*, 106 S.W.3d 190, 193 (Tex.App.-Fort Worth 2003, pet. ref'd). Additionally, we review the entire record in a neutral manner. *Id.*

The latent print report contains the pertinent case information, a list of evidence submitted for analysis, the request for examination and comparison of prints, and a section stating the fingerprint cards are being returned. We note that the report was first identified by the defense. During cross-examination, defense counsel elicited testimony that no suitable prints were found on the firearm. Although the defense did not introduce the report into evidence, the testimony regarding the lack of fingerprints was presented to the jury by Acevedo's counsel. Therefore, the only questionable testimony elicited by the State, from the report, was the same information previously elicited by defense counsel. The State did not emphasize the latent print report during the examination of

other witnesses or closing argument. Although the report did classify Donofrio's death as a homicide, the jury obviously knew the State considered Donofrio's death a murder. Given that the admission of the report did not reveal anything more than what was already known to the jury, it is difficult to see how the error contributed to Acevedo's conviction. Acevedo admitted to shooting Donofrio, but claimed it was an accident. Acevedo's defensive theory is not one of identity, but one of intent. Accordingly, the record supports, beyond a reasonable doubt, that the error did not contribute to the defendant's conviction or punishment. We overrule this appellate issue. *See* TEX.R.APP. P. 44.2(a).

In accordance with Texas Rule of Appellate Procedure 47.1, we need not address the remaining issues. *See* TEX.R.APP. P. 47.1 (encouraging concise opinions addressing only those issues "necessary to final disposition of the appeal").

### CONCLUSION

Although the trial court violated the Confrontation Clause in admitting the latent print report, we conclude, beyond a reasonable doubt, that the error did not contribute to Acevedo's conviction. The trial court did, however, abuse its discretion in admitting Arambula's expert testimony on the effects of methamphetamines and, after a review of the entire record, we cannot conclude the error did not affect his substantial rights. Accordingly, the judgment of the trial court is reversed and this cause is remanded to the trial court for proceedings consistent with this opinion.