*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# MEMORANDUM OPINION

No. 04-09-00267-CR

Scott Allen **VOGEL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B08-132
Honorable Emil Karl Prohl, Judge Presiding

Opinion by: Phylis J. Speedlin, Justice

Sitting: Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed: April 14, 2010

AFFIRMED

Scott Allen Vogel appeals his conviction on three counts of aggravated sexual assault of a child, asserting the trial court erred in denying his motion to quash count one of the indictment and erred in admitting the testimony of the State's expert. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Scott Vogel was in a live-in relationship with S.R.'s biological mother from the time S.R. was three or four years old until she turned eleven years old. When the relationship ended, S.R. chose to go live with Vogel, whom she considered her step-father, because she did not have a good relationship with her mother. Vogel subsequently married Carrie Brandenburgh. In January 2008, S.R. and her younger sister were removed by Child Protective Services from the home of Vogel's parents, with whom the girls had been staying. S.R. was placed in a foster home, and became close with her foster family, particularly the grandmother, Grace. S.R. made an outcry to Grace about Vogel committing sexual abuse against her over a period of years, which led to an investigation and criminal charges. Vogel was charged with three counts of aggravated sexual assault of S.R., a child under the age of fourteen years at the time of the offenses. Count One alleged that Vogel intentionally and knowingly sexually assaulted S.R. by causing her female sexual organ to contact the mouth of Vogel's wife, Carrie Brandenburgh, on May 1, 2006. Count Two alleged that Vogel intentionally and knowingly caused the penetration of the female sexual organ of S.R. by an object, to wit: a vibrator, on May 15, 2006. Count Three alleged that Vogel intentionally and knowingly caused the penetration of S.R.'s female sexual organ by Vogel's finger on June 15, 2006. At the time of the acts charged in the indictment, S.R. was thirteen years old.

At trial, S.R., sixteen years old at the time, testified to a sequence of escalating sexual abuse by Vogel over a period of several years. S.R. stated that Vogel first began touching her with his hands on her chest and vagina under her clothes when she was about four years old and Vogel, S.R. and her mother were living in Michigan. S.R. stated that this type of improper touching happened in a bedroom when no one else was around, and "happened very often." When S.R. was in the first

or second grade, she watched pornographic videos with Vogel in the shop behind their house in Ingram, Texas on more than one occasion. She described one specific time she remembered watching a pornographic video while Vogel put his hands underneath her clothes and ejaculated. S.R. also testified that when she was in first or second grade Vogel would sometimes make her perform oral sex, or do a "BJ" on his penis, and he would ejaculate; this happened more than ten times in the shop. After they moved to Tennessee at the beginning of third grade, Vogel began penetrating S.R.'s vagina with his finger and putting his mouth on S.R.'s vagina. According to S.R., Vogel's improper touching in Tennessee happened "too many [times] to count." Several times while they were living in Tennessee, Vogel attempted to penetrate S.R.'s vagina with his penis, but S.R. would start crying and he would eventually give up. S.R. testified that she told Vogel "no" and to "stop" many times, around 50 times or more, but it did not always work. When S.R. was nine years old, in the fourth or fifth grade, she told a friend about the sexual abuse; the friend told her own mother who reported it to Child Protective Services in Tennessee. After S.R.'s mother threatened her, S.R. told the CPS investigator that she had lied about everything and the investigation was dropped.

At the beginning of S.R.'s sixth grade year, in August 2003, they moved back to Ingram, Texas, and Vogel began penetrating S.R.'s vagina with a vibrator. During the 2005-2006 school year, when S.R. was in the seventh grade, Vogel introduced his girlfriend Carrie Brandenburgh into the sexual abuse by first having S.R. watch them having sex and then later forcing S.R. to participate in sexual activity with Brandenburgh while Vogel watched. S.R. testified that in May 2006, when she was twelve or thirteen years old, an incident occurred in which Brandenburgh put her mouth on S.R.'s vagina while Vogel directed them. During that same time frame, while she was in the seventh

and eighth grade, Vogel often penetrated S.R.'s vagina with a vibrator and his finger. In May 2007, when S.R. was fourteen years old and had finished her freshman year in high school, she made a second outcry, telling Carrie Brandenburgh's sister and mother about the on-going sexual abuse by Vogel. However, Brandenburgh's father convinced them not to "butt into other people's business" and the matter was dropped.

S.R. testified that once the sexual abuse started when she was about four years old, it was continuous until the time CPS removed her and her younger sister from Vogel's parents' home in January 2008; after being placed with a foster family, S.R., fifteen years old, outcried to her foster grandmother. S.R. explained that she did not seek help earlier or more often because Vogel had a bad temper, had physically abused her in the past, and she was afraid of him. At the time of trial, S.R. was living with her aunt and uncle out-of-state, and had been estranged from her mother for the last five years.

The jury convicted Vogel of all three counts of aggravated sexual abuse. The court imposed a 99-year sentence of imprisonment on each count, as recommended by the jury; the court ordered the sentences served consecutively. Vogel filed a motion for new trial which was overruled by operation of law. Vogel now appeals.

## ANALYSIS

Vogel raises two issues on appeal. First, he claims the trial court abused its discretion in denying his motion to quash Count One of the indictment because it failed to provide notice of how Vogel "caused" a third person to engage in sexual contact with S.R. Second, he asserts the trial court erred in admitting the expert testimony of Amy Blanks concerning Abuse Accommodation Syndrome and delayed outcry and recantation by child victims of prolonged sexual abuse.

*Motion to Quash Count One of the Indictment*

In his first issue, Vogel asserts that Count One of the indictment was defective, and should have been quashed upon his timely motion, because it failed to allege the particular manner and means by which he "caused" S.R.'s sexual organ to contact Carrie Brandenburgh's mouth. Vogel contends the defect in the indictment prevented him from receiving adequate notice of the offense charged and from barring a subsequent prosecution for the same offense. The State responds that Count One tracked the statutory language and provided sufficient notice of the particular manner and means used to commit the offense; it asserts that additional details as to how Vogel caused the sexual contact to occur were merely evidentiary and not required in the indictment. The sufficiency of an indictment is a question of law which we review *de novo*. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *Roberts v. State*, 278 S.W.3d 778, 791 (Tex. App.—San Antonio 2008, pet. ref'd). A defendant is entitled to receive notice from the face of the indictment that is specific enough to allow him to investigate the allegations and prepare a defense, as well as to plead the judgment in bar of a subsequent prosecution for the same offense. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. arts. 21.03, 21.04, 21.11 (Vernon 2009); *Moff*, 154 S.W.3d at 601-02. "When a motion to quash is overruled, a defendant suffers no harm unless he did not, in fact, receive notice of the State's theory against which he would have to defend. *Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003).

Count One of the indictment charged Vogel with aggravated sexual assault by alleging that on or about May 1, 2006, he did "intentionally or knowingly cause the female sexual organ of [S.R.], a child who was then and there younger than 14 years of age and not the spouse of the defendant, to contact the mouth of Carrie Brandenburgh." Count One tracked the language of section

22.021(a)(1)(B)(iii) of the Penal Code, and ordinarily that is sufficient to provide a defendant with adequate notice. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii) (Vernon Supp. 2009); *Moff*, 154 S.W.3d at 602. The statute under which Vogel was charged in Count One specifically envisions the potential involvement of a third person by stating that a person commits the offense by causing the sexual organ of the child to contact the mouth of "another person, including the actor." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii). Thus, by its express language, the statute covers a defendant's conduct in causing the child's sexual organ to contact the defendant's own mouth, or the mouth of a third person. *Id.*

Vogel argues that Count One failed to allege the particular "manner and means" he used to commit the offense. The statute, subsection (a)(1)(B)(iii) of section 22.021, does specify several alternate manners and means of committing that particular type of aggravated sexual assault against a child, to wit: by causing the child's sexual organ to have

> *either* contact with or penetration of,
> *either* the mouth, anus, or sexual organ, of
> *either* another person, or the actor (*i.e.*, the defendant).

*Id.* Count One of the indictment did specify the particular manner and means by which section 22.021(a)(1)(B)(iii) was violated by alleging that on or about May 1, 2006, Vogel caused S.R.'s female sexual organ to **contact the mouth of another person**, *i.e.*, Carrie Brandenburgh. *See State v. Mays*, 967 S.W.2d 404, 407 (Tex. Crim. App. 1998) (when a statute defines more than one manner and means of committing the offense, to be sufficient an indictment must identify which statutory manner and means it addresses). The indictment identified the date, the complainant and the third person, and the particular type of sexual contact between the two that Vogel caused to occur. Count One provided Vogel with adequate notice, on its face, of the particular manner and means alleged,

and all the essential elements of the charged offense. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii); *Moff*, 154 S.W.3d at 602.

In his brief, Vogel argues the indictment had to also plead facts showing "how" he *caused* the sexual contact to occur, *e.g.*, by force, coercion, trickery, etc.; he notes that the word "cause" is not defined in the statute. Such additional factual details, however, were not a necessary element of the charged offense under the statute, but merely evidentiary facts that need not be alleged in an indictment. *Moff*, 154 S.W.3d at 603 (State is not required to "lay out its case in the indictment"); *Mays*, 967 S.W.2d at 406. Where, as here, the language of the statute is itself completely descriptive of the nature of the offense, an indictment that tracks the statutory language provides sufficient notice. *Mays*, 967 S.W.2d at 406. As the State notes, while the term "cause" is not defined, the statute does not distinguish between different methods of "causing" the designated sexual contact between the child and the third person. Absent a specific definition or differentiation, the term "cause" is interpreted according to common usage and is assigned its plain meaning within the context of the statute. *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). It is only when a statute uses an undefined term "of indeterminable and variable meaning" that it becomes necessary for an indictment to include more specific pleading in order to provide sufficient notice of the nature of the accusation. *Mays*, 967 S.W.2d at 407; *Sanchez v. State*, 182 S.W.3d 34, 44 (Tex. App.—San Antonio 2005), *aff'd*, 209 S.W.3d 117 (Tex. Crim. App. 2006). We conclude that Count One of the indictment specified the essential elements and manner and means of the offense, and sufficiently enabled Vogel to investigate the facts and prepare his defense, and to bar a subsequent prosecution for the same offense. *Moff*, 154 S.W.3d at 602. Vogel's first issue is overruled.

***Admission of Expert Testimony***

In his second issue, Vogel asserts the trial court erred in admitting the expert testimony of Amy Blanks, a counselor specializing in child sexual abuse, regarding delayed outcry, recantation, and Sexual Abuse Accommodation Syndrome in children who have been sexually assaulted over a long period of time. Specifically, Vogel argues on appeal that Blanks's testimony "was speculative and therefore, irrelevant and unreliable because it was not sufficiently tied to the facts of the case." He complains that Blanks did not tie the "purported science" underlying her testimony to the material facts of this case, such as S.R.'s actual outcries and recantations, but instead testified generally and in relation to hypothetical situations. Vogel does not challenge the qualifications of Blanks as an expert. The State responds that Vogel's complaint on appeal does not comport with his objection in the trial court and therefore any error was not preserved; the State alternatively asserts that, even if the issue was preserved, the expert testimony was reliable and properly admitted under Rule 702. TEX. R. EVID. 702 (providing for the admission of expert testimony when such "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."); *see Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006) (stating three-part test for admission of expert testimony under Rule 702).

In evaluating expert testimony, the trial court must assess whether the expert has made an adequate effort to tie the relevant facts of the case to the scientific principles about which he is testifying. *Morales v. State*, 32 S.W.3d 862, 866 (Tex. Crim. App. 2000). If the expert fails to tie the facts to the expert testimony, the testimony is not admissible. *Griffith v. State*, 983 S.W.2d 282, 287-88 (Tex. Crim. App. 1998); *Rousseau v. State*, 855 S.W.2d 666, 686 (Tex. Crim. App. 1993). We review a trial court's admission of expert opinion testimony for an abuse of discretion, and will

not disturb the court's ruling as long as its decision falls within the zone of reasonable disagreement. *Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

To preserve error for appellate review, the appellant must have made a timely, specific objection in the trial court. TEX. R. APP. P. 33.1(a)(1); *Acevedo v. State*, 255 S.W.3d 162, 167 (Tex. App.—San Antonio 2008, pet. ref'd). To be sufficiently specific, an objection to expert testimony ***must detail the particular deficiency in the reliability*** of the expert's opinion. *Acevedo*, 255 S.W.3d at 167 (emphasis added). During trial, but before Blanks testified, Vogel objected that her expert testimony about delayed outcry and Abuse Accommodation Syndrome was "pseudoscience" not based on objective scientific principles, and was simply speculation and a "subjective opinion." Counsel for Vogel argued, "this is not objective science by any means. This is not chemical analysis . . . This is just simply an opinion by someone about these particular matters . . . who is going to say, Well, this is why, this is why, this is why, which is all basically speculation . . . ." Vogel did not object that Blanks's expert testimony was unreliable because it would fail to tie the scientific principles to the facts of this case. Indeed, the objection that Vogel did make assumed that Blanks would opine as to the reasons "why, why, why" S.R. had made delayed outcries and recantations. The trial court overruled the objection and permitted Blanks to testify, noting it had admitted similar testimony by this expert in previous cases.

During Blanks's testimony on direct examination, she stated she was present in court for S.R.'s testimony and most of the trial. Blanks also stated she had discussed the case with the prosecutor before trial. Blanks testified that, generally, children who undergo sexual abuse for long periods of time may delay making an outcry based on their fear, guilt, or embarrassment, or because

they think no one will believe them. Blanks further explained that Sexual Abuse Accommodation Syndrome is the theory that child victims of sexual abuse commonly do not outcry until they have been in a safe place for an extended period of time; she also testified that a child may recant if he or she gets a negative or disbelieving reaction when they finally make an outcry. Finally, Blanks opined that delayed outcry is a well-recognized phenomenon in the field of child sexual abuse. Blanks made no attempt to tie the facts of S.R.'s case to the general scientific principles about which she testified. Vogel cross-examined Blanks on the general principles in the child sexual abuse field. At no time did Vogel raise an objection that Blanks's testimony was unreliable because it was not tied to the particular facts of S.R.'s case—his current argument on appeal; accordingly, the trial court never had notice of that alleged defect. Vogel may not raise an argument on appeal that does not conform to the objection he made at trial. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) ("an objection stating one legal basis may not be used to support a different legal theory on appeal").

Vogel argues that our opinion in *Acevedo* controls and requires us to conclude that Blanks's testimony was inadmissible because it was not tied to the facts of the case. *See Acevedo*, 255 S.W.3d at 168-170. In *Acevedo*, a panel of our court held that an expert's testimony about the possible effects of methamphetamine on the defendant was purely speculative, and thus unreliable and irrelevant, because the expert testified he did not know any particular facts of the case and based his opinion solely on hypotheticals. *Id.* at 168-69. *Acevedo* is distinguishable, however, because in that case defense counsel specifically objected and moved to strike the expert's testimony for failing to apply it to the facts of the case. *Id.* at 167-68. With regard to preservation of error, the issue in *Acevedo* was whether counsel's objection was timely, having been made for the first time after cross-examination of the expert; there was no question that the specific trial objection matched the issue

raised on appeal. *Id.* Here, Vogel's sole trial objection was that Blanks's expert testimony was "pseudoscience" and speculative; he never objected during or after Blanks's testimony that it was strictly based on hypotheticals, or that she had failed to tie her testimony to the facts of S.R.'s case. *C.f., id.* at 168. Because the complaint Vogel raises on appeal is different from his objection in the trial court, we conclude he failed to preserve the issue for review. TEX. R. APP. P. 33.1(a)(1); *Rezac*, 782 S.W.2d at 870.

Based on the foregoing reasons, we affirm the trial court's judgment.

Phylis J. Speedlin, Justice

DO NOT PUBLISH