NO. 07-09-0233-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

APRIL 28, 2010

_____


DARRELL LYNN COCKRELL, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____


FROM THE 31ST DISTRICT COURT OF LIPSCOMB COUNTY;

NO. 1184; HONORABLE STEVEN RAY EMMERT, JUDGE

_____


Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**


Appellant, Darrell Lynn Cockrell, was convicted by jury verdict of aggravated

sexual assault[1] of a child, J.C.[2], and sentenced to fifteen years confinement. Appellant

---

[1]*See* Tex. Penal Code Ann. § 22.021 (a)(1)(B)(i) and (a)(2)(B) (Vernon Supp. 2009).

[2]Appellant is J.C.'s natural father. At the time of trial, J.C. was twelve years of age. According to her testimony, she was between the ages of four and eleven when the incidents in question occurred.

asserts the trial court erred by: (1) qualifying Priscilla Kleinpeter as an expert witness on the discrete subject of child recantations in sexual assault cases; (2) admitting Kleinpeter's testimony regarding recantations by sexually assaulted and abused children because that testimony was unsupported by evidence of scientific theory; and (3) permitting Kimberly Booth, a lay witness, to express an opinion describing the character of a conversation between J.C. and her brother which ascribed a motive on his part to influence her sworn testimony. We affirm.

## I.     First and Second Points of Error

By his first point, Appellant contends the trial court erred by finding that Kleinpeter was qualified to render an expert opinion on the discrete subject of child recantations in sexual assault cases. By his second point, Appellant contends the subject matter itself is inappropriate for expert testimony because it lacks the requisite reliability to be admissible. For logical reasons, we will address the reliability contention first.

Background

In addition to accusing her father of sexually assaulting her, J.C. had previously accused her brothers, Steven Cockrell and Anthony Cockrell, of also sexually assaulting her. Prior to trial, J.C. had recanted these allegations and defense counsel sought to introduce evidence of her recantation for purposes of attacking her credibility. During the State's case-in-chief, but prior to the submission of any evidence regarding J.C.'s recantation, the State proffered Kleinpeter as an expert "in the area of sex offender

2

treatment providers." [3]  Without objection, the court acknowledged her as an expert and allowed her to present opinion testimony on subjects related to signs, symptoms, and behavioral characteristics that she commonly observed, or are commonly observed, in child victims of sexual assault and sexual abuse.  Those behavioral characteristics included progressive and tentative outcries, withdrawal, anger, self-blame, effects of exposure to pornography, coached or forced accusations, consistency of accusations, common reactions to such abuse by children, their ability to recall specific acts of abuse, and the frequency of abuse among family members.  At that time, Appellant's cross-examination focused on Kleinpeter's contracts with the government, and truth-telling characteristics of child sexual assault victims in general.  During the State's redirect examination, Kleinpeter testified she did not have sufficient information to assess whether J.C.'s statements were truthful because she had not personally spoken with J.C. nor counseled her.

Following the presentation of Kleinpeter's initial testimony, evidence of J.C.'s recantations was presented through defense counsel's cross-examination of J.C.  The State then recalled Kleinpeter.  After testifying she was familiar with the phenomenon of recantation, she cited a study conducted by a council established by the United States Department of Justice.  Appellant then made the following objection, in pertinent part:

---

[3]Kleinpeter testified she had a master's degree in clinical psychology and had been in practice for thirty-seven years.  She also accumulated one hundred post-college credit hours in psychology-related courses and, since 1971, attended forty hours of continuing education annually.  Since 1994, she has been designated a registered sex offender treatment provider based upon the completion of forty hours of course work in the area of sex offender treatment and two hundred hours of supervised work in sex offender treatment.  As part of her practice, she also works with sexual assault victims--infancy through geriatric, male and female, adolescent to adult.  Her practice is comprised of twenty percent sex offenders, ten percent sex assault victims with the remainder general and marital counseling.

I'd object . . . . This is not her qualification. She's not done clinical studies on this. She's merely read documentation. She can't -- I can't cross her because she doesn't know it other than reading it. She's not an expert. She doesn't qualify under Kelly Fry[e]. . . . It doesn't qualify under the Kelly Fry[e] standard as an expert in this area, just because you're an expert as a clinical psychologist, doesn't make you an expert in every little aspect of it. . . . She hasn't done clinical studies, she hasn't done studies, she knows other than what she read. We could have read the same documents ourselves. It doesn't make her capable of testifying in that area.

The trial court overruled Appellant's objection and Kleinpeter was allowed to opine regarding why some child sexual assault victims recant their original allegations of sexual assault. Kleinpeter was then allowed to describe how J.C.'s testimony was consistent with that model.

## Standard of Review

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. Tex. R. Evid. 702.[4] Thus, before admitting expert testimony under Rule 702, the trial court must be satisfied the following conditions are met: (1) the witness qualifies as an expert by reason of his or her knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact

---

[4]Tex. R. Evid. 702. For convenience, citations to the Texas Rules of Evidence throughout the remainder of this opinion will be simply "Rule ___."

4

finder in deciding the case. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex.Crim.App. 2006).

## A. Reliability of Expert Testimony on the Subject of Recantations

Expert testimony is unreliable if it is not grounded "in the methods and procedures of science" and is no more than "subjective belief or unsupported speculation." *Acevedo v. State*, 255 S.W.3d 162, 169 (Tex.App.--San Antonio 2008, pet. ref'd). The reliability of "soft" science evidence, such as behavioral sciences, may be established by showing that (1) the field of expertise involved is a legitimate one, (2) the subject matter of the expert's testimony is within the scope of that field, and (3) the expert's testimony properly relies upon or utilizes the principles in that field. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App. 2000). An objection based on reliability is distinct from an objection based on an expert's lack of qualifications and each should be evaluated independently. *Acevedo,* 255 S.W.3d at 168. However, here, Appellant failed to make *any* objection questioning the reliability of Kleinpeter's testimony.[5]

To preserve error for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002). A specific objection regarding expert testimony must detail

---

[5]Whether we cast Appellant's objection that Kleinpeter did not personally interview the victim as an objection of qualification or reliability is of no moment. There is no requirement that an expert witness personally interview the victim for his or her testimony to be admissible. *See* Tex. R. Evid. 703, 418. *See also Gonzales v. State*, 4 S.W.3d 406, 418 (Tex.App.--Waco 1999, no pet.). In fact, the Court of Criminal Appeals has held that the preferred practice for a child sexual abuse testifying expert witness is to not have the expert personally examine the alleged victim, lest the testimony become tainted by personal reference to the credibility of the child victim's claims. *Id.* (citing *Duckett v. State*, 797 S.W.2d 906, 920 n.18 (Tex.Crim.App. 1990).

5

the particular deficiency in the expert's qualifications or the reliability of the expert's opinions; *Acevedo*, 255 S.W.3d at 167, otherwise the complaining party has failed to preserve an issue for review. *See id. See also Stewart v. State*, 995 S.W.2d 251, 258 (Tex.App.--Houston [14th Dist.] 1999, no pet.) (objection to expert qualification alone does not preserve issue of reliability for appeal); *Chisum v. State*, 988 S.W.2d 244, 250-51 (Tex.App.--Texarkana 1998, pet. ref'd) (objection to expert opinion alone without specifying particular deficiency in reliability preserves no issue for appellate review); *Hepner v. State*, 966 S.W.2d 153, 159-60 (Tex.App.--Austin 1998, no pet.) (broad objection to expert evidence on the authority of *Kelly* and Rules 403, 702, and 705 does not preserve for appeal complaints that State did not prove the reliability of that evidence). Because Appellant made no objection to the reliability of expert testimony on the discrete subject of child recantations in sexual assault cases, Appellant did not preserve his second point of error for review. Therefore, for purposes of addressing Appellant's first point, we will assume, without deciding, that expert testimony on this subject is admissible. *See generally Kirkpatrick v. State*, 747 S.W.2d 833, 836 (Tex.App.--Dallas 1987, pet. ref'd).[6]

---

[6]The *Kirkpatrick* Court observed the following:

The expert's testimony about the general behavior traits of child victims--e.g., delay in reporting the incident, *recantation*, truancy, embarrassment, running away from home, and inconsistent versions of abuse--explains to jurors that such behavior, which might otherwise be attributed to inaccuracy or falsification, is typical of the class of victims and does not necessarily indicate a lack of credibility. Thus, such testimony, which allows the jury to assess the credibility of a particular complainant more fairly by explaining the emotional antecedents underlying the typical victim's behavior, meets the requirements of Rule 702.

747 S.W.2d at 835-36 (emphasis added).

## B.      Kleinpeter's Qualifications as an Expert

No rigid formula exists for determining whether a particular witness is qualified to testify as an expert; *Matson v. State,* 819 S.W.2d 839, 852 n.10 (Tex.Crim.App. 1991), the inquiry is "a flexible one." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  Therefore, we review a court's decision to admit expert testimony based upon an abuse of discretion standard.  *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex.Crim.App. 2005).  An appellate court must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.  *Id.*  "Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Rodgers*, 205 S.W.3d at 527-28

Appellant asserts the trial court abused its discretion by qualifying Kleinpeter as an expert witness because the State failed to establish Kleinpeter's qualifications in the specific area of recantation.  Appellant also asserts Kleinpeter's testimony is unreliable because she failed to: (1) identify case-specific facts upon which she based her opinion; (2) identify the number of cases she had studied related to recantation; (3) support her opinions with information garnered from patients she had treated; (4) identify peer review articles addressing the same or similar field of inquiry; and (5) conduct counseling sessions with J.C.

Here, Kleinpeter was qualified by the State as an expert on the behavior of child victims of sexual assault and abuse.  She testified to their signs, symptoms, and

behavioral characteristics without objection and, on cross-examination, Appellant did examine Kleinpeter on her qualifications as an expert in that area. After Kleinpeter was re-called to testify regarding recantation by child victims of sexual assault and abuse, Appellant objected to her testifying because the State had not presented evidence Kleinpeter had participated in clinical studies on the subject.

We find that the evidence of her education, training, and experience discussed above provided a sufficient basis for the trial court to have found Kleinpeter qualified to testify as an expert on the behavior of sexually assaulted and abused children, including recantation. The subject matter of such testimony is an appropriate one for an expert witness and such testimony can assist the trier of fact in determining how child victims of abuse typically behave. *See Kirkpatrick*, 747 S.W.2d at 836. Further, whether Kleinpeter participated in clinical studies related to recantation by child sexual assault and abuse victims does not affect the admissibility of her testimony but only affects the weight her testimony. *See Hernandez v. State*, 53 S.W.3d 742, 749-50 (Tex.App.--Houston [1st Dist.] 2001, pet. ref'd).

Accordingly, we find the trial court did not abuse its discretion in qualifying Kleinpeter as a testifying expert on the behavior of child sexual assault and abuse victims, including the specific subject of recantation. Accordingly, we overrule Appellant's first and second points of error.

## II.     Third Point of Error

Appellant next contends the trial court erred by permitting Kimberly Booth, a receptionist in the Lipscomb County Courthouse, to testify to the content and character of a conversation that occurred in the courthouse between J.C. and her brother. Appellant asserts the trial court improperly permitted Booth to express an opinion regarding the mental state of J.C.'s brother during the conversation.

Standard of Review

Rule 701 covers the more traditional witness, i.e*.,* one who "witnessed" or participated in the events about which he or she is testifying.  *Osbourn v. State*, 92 S.W.3d  531, 535 (Tex.Crim.App. 2002).  As a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met; *id.* at 537, i.e., the opinions or inferences are (a) rationally based on the witness's perceptions and (b) helpful to the clear understanding of the testimony or the determination of a fact in issue.   92 S.W.3d at 535 (citing *Fairow v. State*, 943 S.W.2d 895, 898 (Tex.Crim.App. 1997)).

The requirement in Rule 701 that the opinion or inference be "rationally based on the perception of the witness" has two elements.  *Scott v. State*, 222 S.W.3d 820, 828 (Tex.App.--Houston [14th Dist.] 2007, no pet.).  The first element is personal knowledge gained by perception of fact by the senses of the witness, including what was seen, heard, smelled, tasted, touched, or felt.  *Id.* (citing *Harnett v. State*, 38 S.W.3d 650, 658 (Tex.App.--Austin 2000, pet. ref'd)).  The second element is the opinion must be one

that a reasonable person could draw from the underlying facts. *Id.* The trial court's decision to admit opinion testimony under Rule 701 is subject to an abuse of discretion standard. *Osbourn,* 92 S.W.3d at 539.

Analysis

Here, Booth personally overheard a conversation between J.C. and another gentleman at the courthouse the day before J.C. testified at trial. Booth knew J.C. and recognized her voice. From the context of the conversation, she knew J.C. was conversing with her brother.[7] During the conversation, Booth heard J.C. say, "I know you don't believe me, but I'm telling the truth." Booth also heard J.C.'s brother say, "I love you, you're my sister, but you've got to stop this. You're hurting people or affecting a lot of people and this is a really big deal. This isn't a game." Booth also testified she had an older brother who had pressured her into doing things and, based on those experiences, could tell from the conversation that J.C.'s brother was pressuring her to change her testimony.

Given the circumstances, location and content of the conversation, it would be within the trial court's discretion to determine that Booth's opinion regarding the emotional undercurrent of the conversation was rationally based on her hearing perception. Further, Booth's opinion was relevant to assist the jury's understanding, or credibility determination, with regard to prior testimony by J.C.'s brother. *See Turro v. State*, 950 S.W.2d 390, 402-03 (Tex.App.--Fort Worth 1997, pet. ref'd).

---

[7]During the conversation, her brother addressed the victim by name and as "his sister," while the victim called her brother by name.

10

That Booth may have expressed an opinion regarding the purpose or nature of the brother's conversation with his sister is of no moment. Although Booth could not possess personal knowledge of the mental state of J.C.'s brother, she possessed personal knowledge of facts from which an opinion regarding the purpose or the nature of his conversation could be drawn. *Fairow*, 943 S.W.2d at 899. Having heard Booth's testimony, "[t]he jury [was] then free to give as much or as little weight to the opinion as it [saw] fit." *Id.* Accordingly, Appellant's third point of error is overruled.

## Conclusion

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice


Do not publish.