COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| LARRY THOMAS FLETCHER, | | No. 08-09-00122-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 227th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Bexar County, Texas |
| | § | |
| Appellee. | | (TC # 2007CR8976) |
| | § | |

**O P I N I O N**

Larry Thomas Fletcher appeals his conviction of aggravated sexual assault of a child, enhanced by two prior felony convictions. A jury found Appellant guilty, found the enhancement paragraphs true, and assessed his punishment at imprisonment for 99 years. We modify the judgment to show a plea of true and a finding of true to both the first and second enhancement allegations and affirm the judgment as modified.

**FACTUAL SUMMARY**

In 2003, ten-year-old A.R. lived with her mother and Appellant, who is her stepfather. One night, Appellant came into the room shared by A.R. and her stepsister. Appellant woke her up and told her to be quiet. He sat down on the bed and pulled down her pajama bottoms and panties. Appellant then took off his pants and climbed on top of her. When he inserted his penis into her vagina, it hurt "really bad." A.R. tried to scream but Appellant had his hand over her mouth. After a few minutes, Appellant finished and got up. A.R. saw blood on the sheets and on Appellant's penis. He told A.R., who was crying, to clean up in the bathroom. He threatened to "go after her mother" if A.R. told anyone what had happened. When A.R. returned to her bedroom, she saw that

the sheets on her bed had been changed. A.R. tried unsuccessfully to wake her stepsister. She then went to her older sister Stephanie's room and told her what had happened. Stephanie wanted to tell their mother but A.R. asked her not to tell because she was afraid Appellant would hurt her. A.R. continued living with her mother and Appellant, but her sister's boyfriend put locks on the bedroom door.

A.R. began living with her father and stepmother when she was thirteen. A.R. did not tell anyone else about the sexual assault until she went to Chicago with her aunt that same year. They were watching a movie together which involved an incident similar to what had happened to her and A.R. began crying. When her aunt asked what was wrong, A.R. told her what Appellant had done. The aunt wanted to tell A.R.'s father but A.R. said that she wanted to tell him herself. One evening, A.R. told her father what Appellant had done. They went to the police station the next day and A.R. made a statement to a police officer. A.R. also underwent a sexual assault examination and counseling at Child Safe.

At trial, Stephanie testified that one evening, Appellant came to her bedroom but he could not open the door because she had locked it. Appellant asked her for a lighter but she told him no and he left. Stephanie noticed that Appellant was intoxicated. The following morning, A.R. went to Stephanie's bedroom. A.R. was crying and upset and initially did not want to tell Stephanie what had happened. Stephanie sat A.R. down on her bed and made her talk. Crying and hysterical, A.R. finally told Stephanie that Appellant had raped her. A.R. did not want to tell her mother because she was afraid. Stephanie told their mother later that day but she did not take it seriously. Stephanie kept A.R. with her more often to protect her from Appellant.

Nancy Kellogg, M.D., a pediatrician, is the medical director of Child Safe. Child Safe is a

nonprofit organization which assesses, evaluates, and treats victims of sexual abuse. Dr. Kellogg testified regarding the examination of A.R. because the nurse who had performed the exam had retired due to medical issues. As part of her regular duties, Dr. Kellogg reviewed the record and the photographs the day after the examination. Dr. Kellogg related the history, A.R.'s description of the sexual assault, and the findings of the genital exam. A.R. had a complete healed tear to the hymen at 8 o'clock which was documented by the examiner. Based on her review of the photograph, Dr. Kellogg believed there may have been a second complete healed tear at 4 o'clock. The evidence of the healed tears of the hymen indicated there had been penetrative trauma consistent with the history given by A.R. Dr. Kellogg also testified as an expert regarding "patterns of disclosure." Dr. Kellogg had surveyed 500 people who had been abused as children and found that a delay in disclosure was common. The average time it took for a child or adolescent to tell someone about the abuse was 2.3 years. The reasons why abused children did not tell about the abuse included fear of what would happen to their family or fear that no one would believe them. It was also common for a child to delay making an outcry to an adult about the abuse if the perpetrator had threatened to harm someone the child loved. It was not uncommon for a child to wait four years before making an outcry. Sometimes there was a trigger such as a school program, television program, or a conversation that led them to tell. Other children told because they could not hold it inside or deal with it alone any longer.

Kerry Bartholomew testified for the defense. Bartholomew had known Appellant for thirty-five years and Appellant had worked for him for several years. Bartholomew also knew A.R.'s mother, Diane. Five to six years before trial, Diane told Bartholomew that one of her daughters had been sexually assaulted by a neighbor or the postman.

The jury rejected Appellant's defense and found him guilty of aggravated sexual assault of a child as alleged in the indictment. Appellant entered a plea of true to both of the enhancement allegations. The jury found the enhancement allegations true and assessed Appellant's punishment at imprisonment for 99 years.

## READING OF THE INDICTMENT

In Point of Error One, Appellant alleges that the trial court abused its discretion by denying his motion for mistrial. After reading the body of the indictment aloud, the prosecutor apparently began to read the enhancement paragraphs, stating "Enhancement allegation." She quickly stopped, skipped to the bottom of the indictment, and read the concluding statement, "Against the peace and dignity of the State, signed foreman of the grand jury." The trial court asked Appellant for his plea and Appellant replied, "Not guilty, Your Honor." The court entered the not-guilty plea on the minutes of the court and defense counsel approached the bench. Counsel moved for a mistrial because the prosecutor had uttered the words "enhancement allegation" while reading the indictment. The trial court denied the motion but offered to instruct the jury. Counsel refused the offer because he did not want to draw attention to the matter.

We review the trial court's denial of a motion for mistrial for an abuse of discretion. *Russeau v. State*, 171 S.W.3d 871, 885 (Tex.Crim.App. 2005); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Archie v. State*, 221 S.W.3d 695, 699 (Tex.Crim.App. 2007). A mistrial is required only in extreme circumstances where the prejudice is incurable. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App.2004). Prejudice is incurable when the objectionable material is clearly calculated to inflame the minds of the jury or was of such a damaging character as to suggest it

would be impossible to remove the harmful impression from the jurors' minds. *See Ladd*, 3 S.W.3d at 567; *Rojas v. State*, 986 S.W.2d 241, 250 (Tex.Crim.App. 1998).

The first issue is whether Appellant failed to preserve the issue by refusing the trial court's offer to instruct the jury to disregard. A defendant is not required to request an instruction to disregard if the prejudice from the error is incurable. *Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App. 2004). If the alleged error is curable, however, the party who fails to request an instruction to disregard will have forfeited appellate review. *Id*. at 70.

Appellant argues that the prosecutor intentionally read the words "enhancement allegation" in an effort to prejudice the jury against Appellant at the outset of the trial. He reasons that the error must have been intentional because the trial court had just moments earliest granted his request for a motion in limine and had instructed the prosecutors to not mention Appellant's prior convictions without first approaching the bench. There is no indication in the record that the prosecutor intentionally read these words. Instead, she immediately skipped to the conclusion of the indictment. We are also unable to conclude that the minds of the jurors would have been inflamed by hearing "enhancement allegation." It is doubtful that a lay person would know that those words mean that Appellant had prior felony convictions. Appellant does not point to anything in the record supporting a contrary conclusion. Because the error was curable, Appellant waived appellate review by not asking for an instruction to disregard. We overrule Point of Error One.

## NURSE'S EXAMINATION REPORT

In Point of Error Two, Appellant contends the trial court abused its discretion by permitting Dr. Nancy Kellogg to testify regarding the report prepared by the nurse who performed the sexual assault examination. Appellant relies on *Crawford v. Washington*, 514 U.S. 36, 124 S.Ct. 1354, 158

L.Ed.2d 177 (2004) in support of his argument.

We review decisions to admit or exclude evidence under the abuse of discretion standard. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex.Crim.App. 2006). The trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex.Crim.App. 2007). The Confrontation Clause of the Sixth Amendment guarantees that in all criminal prosecutions, the accused has the right to be confronted with the witnesses against him. U.S.CONST. Amend. VI. This procedural guarantee applies to both federal and state prosecutions. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex.Crim.App. 2008). Consistent with this guarantee, a testimonial hearsay statement may be admitted in evidence against a defendant "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *De La Paz*, 273 S.W.3d at 680, *quoting Crawford v. Washington*, 541 U.S. at 59, 124 S.Ct. 1354.

Appellant complains that the examination report, State's Exhibit 4, is a testimonial hearsay statement. But Appellant did not lodge any objection to the admission of Exhibit 4. When the State called Dr. Kellogg as a witness, Appellant objected outside the jury's presence to all of her testimony because she did not conduct the sexual assault examination. Appellant argued that his right to confront the witnesses against him would be violated if Dr. Kellogg testified about the report. The trial court overruled the objection. Once a document is admitted into evidence, a witness may read the document aloud. *Acevedo v. State*, 255 S.W.3d 162, 171 (Tex.App.--San Antonio 2008, pet. ref'd), *citing Wheatfall v. State*, 882 S.W.2d 829, 837-38 (Tex.Crim.App. 1994). And as an expert witness, Dr. Kellogg was permitted to testify regarding the materials she reviewed, including Exhibit 4. *See* TEX.R.EVID. 703, 705(a). Any complaints Appellant had about the admission of the report

were waived by his failure to object. TEX.R.APP.P. 33.1. We overrule Point of Error Two.

## EXPERT TESTIMONY

In Point of Error Three, Appellant argues the trial court erred by permitting Dr. Kellogg to offer irrelevant opinion testimony regarding patterns of disclosure. Appellant maintains that Dr. Kellogg had not been qualified as an expert on this subject.

Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX.R.EVID. 702. Before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex.Crim.App. 2006). These three conditions are commonly referred to as (1) qualification; (2) reliability; and (3) relevance. *Vela v. State*, 209 S.W.3d 128, 131 (Tex.Crim.App. 2006). This case concerns only the first and third conditions. A trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case. *Rodgers*, 205 S.W.3d at 528.

We will first consider whether the trial court abused its discretion by determining Dr. Kellogg was qualified to testify as an expert witness in the field of child sexual abuse and patterns of disclosure. Dr. Kellogg is a professor of pediatrics at the University of Texas Health Sciences

Center. She works with three different programs that evaluate children for suspected abuse. Dr. Kellogg is the medical director of Child Safe, where children are evaluated for suspected sexual abuse. She also works at the Center for Miracles at Christus Santa Rosa, where children are evaluated for physical abuse and neglect. Dr. Kellogg also conducts research in the field and teaches other physicians about child abuse. She is board certified in pediatrics and at the time of trial, expected to become board certified in the recently recognized speciality of child abuse pediatrics later in 2009. Dr. Kellogg had published over fifty articles and book chapters regarding child abuse and conditions confused with abuse. She had also participated in numerous studies related to sexual abuse of children and patterns of disclosure. She explained that patterns of disclosure related to why children tell, why they do not tell, and how long they wait to tell. Some of the studies examined the relationship between domestic abuse in the home and whether the children will tell. Dr. Kellogg had performed between 8,000 and 9,000 sexual assault examinations in her career. Finally, she had previously testified as an expert in sexual abuse.[1] The record supports a conclusion that Dr. Kellogg was qualified by virtue of her education, knowledge, training, and experience to testify as an expert in the field of child sexual abuse and patterns of disclosure.

Appellant also argues that the trial court abused its discretion by finding the expert testimony would actually assist the jury in deciding the case. To be relevant, expert testimony must relate to the pertinent facts of the case. *Morales v. State*, 32 S.W.3d 862, 865 (Tex.Crim.App. 2000); *see also Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002)(holding that the relevance requirement for the admission of expert testimony incorporates traditional relevancy analysis under

---

[1] *See e.g., Reyes v. State*, 274 S.W.3d 724, 729 (Tex.App.--San Antonio 2008, pet. ref'd).

-8-

Texas Rules of Evidence 401 and 402, and is met if the expert testimony is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R. EVID. 401. Relevant evidence is admissible. TEX.R. EVID. 402.

A.R. waited four years before telling her father about the sexual assault. The primary reason the child gave for not making an immediate outcry was that Appellant threatened to harm her mother. Dr. Kellogg testified that the average time it takes a child to report sexual abuse was 2.3 years, but it is not uncommon for a child to wait four years. Dr. Kellogg explained that it was common for a child to delay making an outcry to an adult about the abuse if the perpetrator had threatened to harm someone the child loved. Dr. Kellogg's expert testimony regarding patterns of disclosure was relevant to explain the various reasons why children delay making a report of sexual abuse and it was sufficiently tied to the facts of this particular case such that it assisted the jury in resolving a factual issue. Point of Error Three is overruled.

## CHALLENGE TO THE TRANSFER ORDER

In Points of Error Four through Seven, Appellant contends this court lacks jurisdiction of the appeal because the order issued by the Texas Supreme Court transferring the appeal from the San Antonio Court of Appeals to the Eighth Court of Appeals is void. More specifically, he argues in Point of Error Four that Section 73.001[2] of the Texas Government Code violates the Equal Protection Clause of the United States Constitution because it does not give proper effect to the

---

[2] The Supreme Court may order cases transferred from one court of appeals to another at any time that, in the opinion of the Supreme Court, there is good cause for the transfer. TEX.GOV'T CODE ANN. § 73.001 (Vernon 2005).

Texas voters who elect the justices of the intermediate appellate courts. In Point of Error Five, he asserts the transfer order is void because Section 73.001 conflicts with the provisions of the Texas Constitution giving the Court of Criminal Appeals exclusive authority to determine criminal law matters. In Point of Error Six, Appellant maintains that we lack jurisdiction because the transfer order violates the Equal Protection and Due Course of Law provisions in the Texas Constitution. Finally, Appellant challenges our jurisdiction on the ground that Section 73.001 violates the separation of powers provision found in Article 2, Section 1 of the Texas Constitution. The State responds that Appellant failed to preserve error by following the procedure established by the Texas Supreme Court in *Miles v. Ford Motor Company*, 914 S.W.2d 135, 137 (Tex. 1995).

The Supreme Court transferred several appeals, including this one, to this court pursuant to Section 73.001 of the Texas Government Code. MISC. DOCKET ORDER 09-9049 (Tex. March 31, 2009). In *Arocha v. State*, a defendant raised the same issues regarding the transfer order. *Arocha v. State*, No. 08-07-00108-CR, 2009 WL 1883733 (Tex.App.--El Paso June 30, 2009, pet. granted). We held that the defendant was required to preserve those arguments by following the procedure outlined by the Texas Supreme Court in *Miles*. *Id.* at *5. According to *Miles*, the proper procedure for obtaining a transfer is by motion:

> The party requesting a transfer should file a copy of the motion to transfer in each of the two courts of appeals, asking that, when the motion is forwarded to the Supreme Court, each court of appeals advise the Supreme Court in writing whether it has any objection to the proposed transfer. Any briefs in favor of the proposed transfer should also be filed in each court of appeals and forwarded with the transfer motion. We will then have the motion, the briefs, and the comments of the two courts of appeals in determining whether to grant the motion to transfer.

*Miles*, 914 S.W.2d at 137 n.2.

Prior to the issuance of our decision in *Arocha*, Appellant filed with the Supreme Court a

"Special Appearance and Objection to Case Transfer of Case from Courts of Appeals." We received a courtesy copy on May 4, 2009. The Supreme Court denied the objection on June 17, 2009. MISC. DOCKET ORDER 09-9098 (Tex. June 17, 2009). The special appearance and objection filed by Appellant with the Supreme Court does not comply with the procedure set forth in *Miles* because Appellant did not file a motion to transfer in this court and, to our knowledge, he did not file a motion to transfer in the Fourth Court of Appeals. The Supreme Court could have denied Appellant's objection because he failed to follow the specified procedure. For that reason alone, we believe Appellant has not preserved the complaints presented in Points of Error Four through Seven. Additionally, we note that the objection filed with the Supreme Court is limited to arguing that the transfer order is void because the Court of Criminal Appeals has exclusive authority to determine criminal law matters. That objection would not preserve the complaints raised in Points of Error Four, Six, and Seven. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex.Crim.App. 2009)(requiring the substance of the objection at trial to comport with that on appeal; otherwise the matter is waived).

Assuming Appellant's objection preserved the argument raised in Point of Five, we find it is without merit. He argues that we lack jurisdiction of the appeal because Section 73.001 conflicts with the provisions of the Texas Constitution giving the Court of Criminal Appeals exclusive authority to determine criminal law matters. Our jurisdiction is defined by the Texas Constitution and by statute. *See* TEX.CONST. art. V, § 1 (courts in which judicial power is vested), TEX.CONST. art. V, § 6 (courts of appeals); TEX.GOV'T CODE ANN. § 21.001 (Vernon 2004)(inherent power and duty of courts), TEX.GOV'T CODE ANN. § 22.220 (civil jurisdiction), TEX.GOV'T CODE ANN. § 22.201 (Vernon Supp. 2010)(courts of appeals districts), TEX.GOV'T CODE ANN. § 22.221 (writ power), TEX.GOV'T CODE ANN. §§ 73.001-73.002 (Vernon 2005)(transfer of courts of appeals'

-11-

cases); TEX.CODE CRIM.PROC.ANN. art. 4.01 (Vernon 2005)(providing that courts of appeals have jurisdiction in criminal actions); TEX.CODE CRIM.PROC.ANN. art. 4.03 (providing that "[t]he Courts of Appeals shall have appellate jurisdiction coextensive with the limits of their respective districts in all criminal cases except those in which the death penalty has been assessed."). Article V, Section 6 of the Texas Constitution expressly provides that the court of appeals "shall have such other jurisdiction, original and appellate, as may be prescribed by law." TEX.CONST. art. V, § 6. Section 73.002 of the Government Code provides that the court of appeals to which a case is transferred has jurisdiction of the case without regard to the district in which the case originally was tried and to which it is returnable on appeal. TEX.GOV'T CODE ANN. § 73.002(a)(Vernon 2005). Even if we determined that Section 73.001 conflicts with the constitutional provisions granting the Court of Criminal Appeals' exclusive jurisdiction over criminal law matters, we would not lack jurisdiction of the appeal because it has been provided for by statute. *See Arocha*, 2009 WL 1883733 at \*5; *see also Simmons v. State*, No. 07-07-0282-CR, 2009 WL 2341921 (Tex.App.--Amarillo July 30, 2009, pet. ref'd)(rejecting arguments that transfer of appeal violated the Texas Constitution). Points of Error Four through Seven are overruled.

The trial court's judgment is in error because it reflects a finding of true as to only the first enhancement allegation when the record reflects Appellant entered a plea of true, and the jury found true, two enhancement allegations. Accordingly, we modify the judgment to show Appellant entered a plea of true to the first and second enhancement allegations and the jury found both enhancement allegations to be true. We affirm the judgment as modified.

September 29, 2010

_____

-12-

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., Rivera, J., and Larsen, J.
Larsen, J., sitting by assignment

(Do Not Publish)