

## NUMBER 13-08-00734-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

BENJAMIN CURCURU,                                                                          Appellant,

v.

THE STATE OF TEXAS,                                                                          Appellee.

### On appeal from the 319th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Vela
### Memorandum Opinion by Justice Rodriguez

Appellant Benjamin Curcuru challenges his conviction by a jury for aggravated

sexual assault of a child, for which he was sentenced to forty-five years' incarceration.

*See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (Vernon Supp. 2010). By four issues,

Curcuru argues that: (1) the trial court erred in admitting evidence of extraneous

misconduct; (2) the trial court erred in refusing to admit certain evidence relevant to his defense; (3) the trial court erred in admitting the testimony of one of the State's expert witnesses because the witness was not qualified as an expert; and (4) he received ineffective assistance of counsel.   We affirm.

## I.   BACKGROUND[1]

Curcuru was indicted for aggravated sexual assault of a child as follows:

> [O]n or about October 29, 2007, in Nueces County, Texas, [Curcuru] did then and there intentionally or knowingly cause the penetration of the anus of [A.G.], a child younger than 6 years of age and not the spouse of [Curcuru], by [Curcuru]'s sexual organ and/or by [Curcuru]'s finger . . . and/or by an object unknown to the Grand Jury.[2]

*See id.* § 22.021(a)(1)(B)(i).   He pleaded not guilty to the charge.   After an eight-day trial during October 6-20, 2008, the jury returned a guilty verdict, sentenced Curcuru to forty-five years' incarceration in the Institutional Division of the Texas Department of Criminal Justice, and assessed a $10,000 fine.   Curcuru's sentence was announced in open court on October 21, 2008.

On November 20, 2008, Curcuru filed a motion for new trial, in which he argued that:   (1) the trial court erred in admitting extraneous misconduct evidence; (2) the trial court erred in refusing to admit certain evidence offered by Curcuru; (3) jury misconduct

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.   *See* TEX. R. APP. P. 47.4.

[2] In addition, Curcuru's sexual assault count contained a deadly weapon enhancement, *see* TEX. PENAL CODE ANN. § 22.021(a)(2)(A)(iv) (Vernon Supp. 2010), and he was also indicted for injury to a child, *see id.* § 22.04(a) (Vernon Supp. 2010); however the State abandoned the deadly weapon enhancement and the injury to a child count before trial.

A.G.'s mother, E.F., was also indicted for the foregoing offenses but her case is not before the Court in this appeal.

denied him a fair and impartial trial; (4) he received ineffective assistance of counsel; and (5) prosecutorial misconduct prejudiced his trial. No affidavits were attached to the motion. On December 11, 2008, Curcuru filed an amended motion for new trial; the amended motion contained the first four arguments from the original motion but dropped the prosecutorial misconduct argument. The State responded to the original motion for new trial but objected to the amended motion as untimely filed. On December 18, 2008, Curcuru filed a motion for leave to file his amended motion for new trial; Curcuru attached to this motion for leave several affidavits in support of his ineffective assistance argument.

On December 19, 2008, the parties appeared before the trial court to argue the motion for new trial. At this proceeding, the State objected to Curcuru's amended motion and the affidavits as untimely filed, and the trial court expressly declined to consider the amended motion and affidavits because they were filed outside the thirty-day deadline for such motions and amendments.[3] *See* TEX. R. APP. P. 21.4(a)-(b). No other evidence was presented at the proceeding, but the trial court did allow Curcuru to submit his affidavits as "exhibits . . . for appellate purposes." The trial court denied Curcuru's motion. This appeal followed.

## II. EXTRANEOUS MISCONDUCT

In his first issue, Curcuru argues that the trial court erred in admitting the following evidence at trial: testimony by E.F., A.G.'s mother and Curcuru's girlfriend at the time of the alleged assault, regarding the sexual preferences and habits of Curcuru; testimony by Austin Nicole DeBord regarding her sexual relationship with Curcuru when she was

---

[3] On appeal, Curcuru does not challenge the trial court's refusal to consider the amended motions and accompanying affidavits.

3

thirteen to fourteen years old; and video testimony by C.M., the son of one of Curcuru's former girlfriends, that Curcuru had sexually assaulted him while Curcuru was dating C.M.'s mother.

Specifically, Curcuru complains of the following testimony by E.F.:

[Prosecutor]: In your opinion, did you and Benjamin [Curcuru] have a normal sex life?

[E.F.]: No.

[Prosecutor]: Okay.  Did he seem to have the same sexual interest in you that the other men had had?

[E.F.]: No.

[Prosecutor]: Okay.  Can you explain what would happen at night when you were sleeping?

[E.F.]: I would be woken up by him rolling me over –

[Prosecutor]: Rolling you over where?

[E.F.]: Rolling me onto my stomach.

[Prosecutor]: Not on your back, but your stomach.

[E.F.]: Onto my stomach.

[Prosecutor]: Okay.

[E.F.]: And he would enter me from that position.  He would – I – Sorry.

[Prosecutor]: Okay.  So you would be asleep.  Did he – was he interested in missionary style?

[E.F.]: No.

. . . .

4

[Prosecutor]: Now, let's talk about a little bit, when he would wake you up and roll you on your stomach, where would he place his penis?

[E.F.]: He would place it, either inside me or in between my underwear and butt.

[Prosecutor]: The common term is "dry humping."

[E.F.]: Yes.

. . . .

[Prosecutor]: Okay. Were you willing to have regular intercourse with him?

[E.F.]: Yes.

[Prosecutor]: And in the course of the rubbing up against your bottom, did you get the impression that he wanted to put his penis in your anal area?

[E.F.]: Yes.

. . . .

[Prosecutor]: Um, did this type of, um, sexual interest of his, he always – would it be fair to say he always wanted you on your stomach?

[E.F.]: Yes.

[Prosecutor]: And he wanted to be around your bottom area.

[E.F.]: Yes.

Curcuru complains of the following testimony by DeBord, who stated that she was twenty years old at the time of trial and then specifically testified as follows:

[Prosecutor]: Okay. When you were[] younger did you come to know someone named Benjamin Curcuru?

[DeBord]: Yes.

5

[Prosecutor]:     How old were you?

[DeBord]:     13, 14.

[Prosecutor]:     Okay.   And how old was Benjamin?

[DeBord]:     24?   25?

[Prosecutor]:     Okay.   And did you – did Benjamin have a sexual relationship with you at that age?

[DeBord]:     Yes, he did.

[Prosecutor]:     Okay.   And would he enter your body with his penis?

[DeBord]:     Yes.

[Prosecutor]:     And what part of your body would he enter with his penis?

[DeBord]:     My anus.

[Prosecutor]:     Okay.   Did this happen on few or many occasions?

. . . .

[DeBord]:     Many, many times over the course of two years.

[Prosecutor]:     Okay.   Like 20, 30, 40 times?

[DeBord]:     Um, 20 or above.

[Prosecutor]:     Okay.   Did he prefer anal, instead of vaginal?

[DeBord]:     No vaginal intercourse.

[Prosecutor]:     Just anal.

[DeBord]:     And oral.

. . . .

[Prosecutor]:     And did he know your age?

6

[DeBord]:          Yes, he did.

Finally, Curcuru complains of the video statement of C.M. that was admitted by the trial court and played for the jury.  C.M.'s mother dated Curcuru in 2001.  In the video, C.M.—who was eleven years old at the time of the video—recounted several incidents when he was three to four years old in which he was awakened in the middle of the night by someone "punching" him in the back and biting his toes; C.M. also stated that he felt like he was being stabbed by a knife in his back.  C.M. stated that he would scream and that first Curcuru and then his mother would rush into his bedroom.  C.M. stated that he glimpsed Curcuru's face one time in his bedroom during one of these alleged incidents. In the video, C.M. also stated that Curcuru taught him curse words and encouraged C.M. to use those words in front of his mother.

With respect to C.M.'s testimony, in particular, Curcuru argues that the State failed to give proper notice of its intent to present that testimony.  *See* TEX. R. EVID. 404(b); TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3 (Vernon Supp. 2010).  With respect to all of the three foregoing testimonies, Curcuru argues that each was inadmissible because the evidence served only to prove actions in conformity with character, in violation of rule 404(b), and the prejudice of the evidence on the jury outweighed its probative value, in violation of rule 403.  *See* TEX. R. EVID. 403, 404(b).

### A.     Standard of Review

The standard of review for the admissibility of evidence is abuse of discretion. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  Under an abuse of discretion standard, we will uphold the decision of the trial court concerning the

7

admissibility of evidence unless the ruling rests outside the zone of reasonable disagreement.  *Id.*

## B.    Inclusion of C.M.'s Testimony in Pre-trial Disclosures

We first address Curcuru's argument that the State failed to disclose the testimony of C.M. prior to trial as required by rule 404(b).[4]  *See* TEX. R. EVID. 404(b).   On February 7, 2008, Curcuru filed his request with the State for evidence of extraneous crimes, misconduct, and other bad acts intended to be used by the State at trial.   On July 31, 2008, the State filed its notice of possible expert witnesses, and on August 1, 2008, the State filed its notice of possible extraneous offenses and bad acts evidence.   Neither notice mentioned C.M. as a possible witness.   On October 6, 2008, the first day of voir dire, the State supplemented its prior notices; this supplement was the first written notice that contained C.M. as a possible witness.[5]

However, although Curcuru objected to the testimony of C.M. on relevancy grounds, he did not object to C.M.'s testimony on the basis that the State failed to give him timely notice.   *See* TEX. R. APP. P. 33.1(a); *Brown v. State*, 880 S.W.2d 249, 252 (Tex. App.–El Paso 1994, no pet.) (holding that appellant failed to preserve his failure-to-notice complaint where "defense counsel did not object that the State failed to give timely notice

---

[4] Curcuru also argues that the State failed to disclose C.M.'s testimony prior to trial in violation of article 38.37 of the code of criminal procedure.   *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3 (Vernon Supp. 2010).   However, article 38.37 applies to evidence of "other crimes, wrongs, or acts committed by the defendant against *the child who is the victim of the alleged offense* . . . ."   *See id.* art. 38.37, §§ 2-3 (emphasis added).   The complained-of evidence relates to an alleged act against a child other than A.G., the child alleged to be the victim in this case.   Because article 38.37 is inapplicable to the complained-of evidence, we will not consider it as a ground for the inadmissibility of C.M.'s testimony.

[5] We note that, at several pre-trial hearings in the two months preceding Curcuru's October 2008 trial, the prosecutor and counsel for Curcuru refer to and discuss the potential testimony of C.M.   This suggests that, even if Curcuru did not have official written notice regarding C.M., he did have knowledge of the potential that C.M. would be a witness for the State.

8

of its intent to use" certain extraneous misconduct).   Curcuru therefore did not preserve this issue for appeal.   We overrule Curcuru's first issue to the extent it complains of the failure by the State, if any, to timely notify Curcuru of C.M.'s testimony.

## C.      Character Conformity and Probative Value v. Potential for Prejudice—Rules 403 and 404(b)

Having determined that Curcuru's failure-to-notice complaint was not preserved, we now address Curcuru's second argument that the testimony of E.F., DeBord, and C.M. served only to prove character conformity and was more prejudicial than probative.   *See* TEX. R. EVID. 403, 404(b).

### 1.      Applicable Law

The general rule is that the defendant is to be tried only for the offense charged, not for any other crimes or for being a criminal generally. However, evidence of extraneous acts of misconduct may be admissible if (1) the uncharged act is relevant to a material issue in the case, and (2) the probative value of that evidence is not significantly outweighed by its prejudicial effect.   Because the propensity to commit crimes is not a material fact in a criminal case, Rule 404(b) explicitly prohibits the admission of uncharged acts to prove conduct in conformity with a bad character.

One of the main rationales for admitting extraneous offense evidence is to prove the identity of the offender.   Here, the theory of relevancy is usually that of modus operandi in which the pattern and characteristics of the charged crime and the uncharged misconduct are so distinctively similar that they constitute a "signature."   Usually, it is the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or modus operandi of a single individual.   No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person.   But if the similarities are "generic," i.e., typical to this type of crime, they will not constitute a "signature" crime.   Sometimes, however, the "signature" is one unique characteristic.   For example, suppose that three bank robberies are committed over a four-year period in different cities in which the robber used

> an antique silver crossbow. This scenario is so unusual that it is highly likely that each robbery was committed by the same person using the same antique silver crossbow. This is "the mark of Zorro" mode of proving identity; it is a remarkably unusual fact, in which a single detail suffices to establish identity

*Segundo v. State*, 270 S.W.3d 79, 87-88 (Tex. Crim. App. 2008) (internal citations omitted); *see* TEX. R. EVID. 404(b); *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006). We give considerable deference to the trial judge in determining whether identity is, in fact, disputed. *Segundo*, 270 S.W.3d at 86 (citing *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004); *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996)). "It may be placed in dispute by the defendant's opening statement or cross-examination, as well as by affirmative evidence offered by the defense." *Id.*

And "although the modus operandi theory of admissibility under Rule 404(b) usually refers to evidence offered to prove the identity of a specific person, its use is not so limited in the law." *Casey*, 215 S.W.3d at 881. Modus operandi may also be used to show "lack of consent, motive, and the manner of committing an offense." *Id.* In fact, the court of criminal appeals has noted that "'evidence of a remarkably similar act might be admissible to prove the corpus delicti (the crime itself), intent, or lack of consent'" under this modus operandi theory. *Id.* (quoting *Daggett v. State*, 187 S.W.3d 444, 453 n. 18 (Tex. Crim. App. 2005)) (other citations omitted).

Even if extraneous misconduct evidence is not barred under rule 404(b), the opponent of the evidence may further object under rule 403. *Casey*, 215 S.W.3d at 879 (citing *Santellan v. State*, 939 S.W.2d 155, 169-70 (Tex. Crim. App. 1997)). Under rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed

by the danger of unfair prejudice . . . ."  TEX. R. EVID. 403.  "Probative value" means "the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence."  *Casey*, 215 S.W.3d at 879 (citing *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006)).  "Unfair prejudice" means a tendency to suggest decision on an improper basis.  *Id.* (citations omitted). "Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence."  *Id.* at 880 (citations omitted).  To determine whether the prejudicial value of the admitted relevant evidence outweighs its probative value, we may consider the following factors: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some emotional, yet indelible way; (3) the proponent's need for the evidence; and (4) the time the proponent needs to develop the evidence.  *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

"Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial."  *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991); *see Casey*, 215 S.W.3d at 879 ("In keeping with the presumption of admissibility of relevant evidence, trial courts should favor admission in close cases.").  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  TEX. R. EVID. 401.

## 2.    Analysis

Curcuru made his opening statement after the State rested its case-in-chief; it consisted of the following:

> I only have a very brief opening statement.   You've heard most of the facts so far.   Obviously, we contend and we have contended that Benjamin Curcuru did not do this heinous crime, that this heinous crime was done by [E.F.] and no one else, the "horrible person," says the prosecutor, upon whom this case is based. . . .   We expect to introduce various witnesses who are familiar with Mr. Curcuru and with his reputation, and to flush out some facts regarding this case.

Curcuru also questioned numerous witnesses about the abusive conduct of E.F. toward A.G.   Specifically, he questioned witnesses concerning:   statements made by A.G. to various people that "Mommy hit" and "Mommy poke"; his theory that E.F. was manipulative; and alleged attempts by E.F. to persuade Curcuru to take the blame for A.G.'s injuries.   Thus, in both his opening statement and his questioning of witnesses, Curcuru placed his identity as the perpetrator squarely at issue, and the trial court did not abuse its discretion in so determining.   *See Segundo*, 270 S.W.3d at 86.

The State's theory of relevance for offering the extraneous misconduct evidence was based on establishing Curcuru's modus operandi and identity.   At trial, the State asserted that Curcuru intentionally targeted E.F. and A.G. as a vulnerable family.   The State asserted that Curcuru attempted to alienate A.G. from E.F., in part, by teaching A.G. to curse at her mother so that E.F. would punish A.G., thus driving A.G. into a closer relationship with Curcuru.   Part of the State's theory at trial was also that Curcuru had a preference for anal intercourse and that, when he could not have it with adult women, he looked to children for that release.

12

The evidence about which Curcuru complains shows a modus operandi that the State used both in its identifying of Curcuru as the perpetrator and in establishing the manner in which Curcuru committed the offense. *See Casey*, 215 S.W.3d at 881. E.F's testimony regarding her impression that Curcuru preferred anal intercourse connects Curcuru to the anal sexual act with A.G. alleged in the indictment. DeBord's testimony—that Curcuru had anal sex with her when she was thirteen to fourteen years old—similarly identified Curcuru. In addition, from C.M.'s statements in his outcry video regarding the pains he felt on his backside, the jury could have reasonably inferred that Curcuru was penetrating C.M.'s anus. Finally, C.M.'s statements that Curcuru taught him curse words to say to his mother support the State's theory that part of Curcuru's pattern was to cause animosity between the child and parent and create a bond with Curcuru.

We conclude that "the pattern and characteristics" of the alleged offense against A.G. were so "distinctively similar" to the misconduct adduced in the foregoing evidence that a "signature" by Curcuru was apparent. *See Segundo*, 270 S.W.3d at 87-88. Each of the complained-of testimonies was, therefore, properly admitted as a part of the State's case to establish Curcuru's identity as the actor who sexually assaulted A.G and to establish the manner in which the offense was committed. *See id.*; *see also Casey*, 215 S.W.3d at 881. In other words, the extraneous offense evidence was relevant to a material issue in the case, serving to prove identity and modus operandi and not character conformity only. *See* TEX. R. EVID. 404(b).

13

With regard to whether the foregoing evidence was more prejudicial than probative, we also conclude that it was not. First, the State's need for the evidence was considerable. *See Erazo*, 144 S.W.3d at 489. As was noted by the trial court, the State's case was based almost entirely on circumstantial evidence. There was no direct evidence regarding how A.G. obtained the tearing injuries to her anus—no one witnessed any actor penetrating A.G.'s anus. Further, relatively little time was spent by the State developing the evidence. *See id.* In an eight-day trial, the small portion of E.F.'s testimony about which Curcuru complains, the brief testimony of DeBord, and the approximately thirty-minute video of C.M. did not occupy a significant amount of time such that the jury might have been disproportionately impacted by this evidence rather than the bulk of the other evidence advanced by both parties.

And although the content of the complained-of evidence was certainly emotional, its probative value was high. *See id.* It was critical to the State's establishing of Curcuru's modus operandi, a matter that was clearly disputed by Curcuru when he put his identity at issue. *See Segundo*, 270 S.W.3d at 90 (concluding that evidence that established the defendant's modus operandi was more probative than prejudicial); *see also Casey*, 215 S.W.3d at 882-83 (reasoning that extraneous misconduct evidence, though inflammatory, was more probative than prejudicial because it was relevant to the issue of consent, which was the ultimate contested issue at trial). This evidence was highly relevant. It made the existence of a material and, perhaps, the ultimate disputed fact at trial—Curcuru's identity as the perpetrator—more probable. *See* TEX. R. EVID. 401. We are mindful of the long-standing assumption that relevant evidence will be more

14

probative than prejudicial and that rule 403 favors admissibility and, thus, cannot conclude that the trial court erred in determining that it was admissible. *See Montgomery*, 810 S.W.2d at 389; *see also* TEX. R. EVID. 403.

In sum, because the testimonies of E.F. and DeBord and the video statement of C.M. were admitted for purposes other than character conformity and were more probative than prejudicial, we conclude that the trial court did not abuse its discretion in admitting the evidence. *See Casey*, 215 S.W.3d at 879; TEX. R. EVID. 403, 404(b). We overrule Curcuru's first issue.

### III. EXCLUSION OF EVIDENCE

By his second issue, Curcuru argues that the trial court erred in excluding the following evidence: (1) the police statement of Sherry DeBord, Austin Nicole DeBord's mother; (2) A.G.'s video outcry interview by Ricardo Jimenez; (3) DNA test results; (4) the police statement of H.T., C.M.'s mother; (5) Child Protective Services (CPS) records related to A.G. and her mother; and (6) A.G.'s mother's statements to the district attorney and police.

At the outset, we conclude that Curcuru has inadequately briefed his argument on the first, third, fourth, fifth, and sixth pieces of evidence about which he complains. In his brief, Curcuru cites no legal authority and provides no substantive legal analysis regarding why this evidence was admissible. *See* TEX. R. APP. P. 38.1(i). Absent any authority or meaningful analysis, we will not make Curcuru's argument for him, and he has therefore waived this issue in so far as it complains of those five particular pieces of evidence. *See id.*; *see also Garza v. State*, 290 S.W.3d 489, 490-91 (Tex. App.–Corpus

15

Christi 2009, pet. ref'd) (holding that appellant waived issues where she provided no authority or argument in support of her assertions).

With regard to the second piece of complained-of evidence, the forensic interview of A.G. by Jimenez, Curcuru argues that it was admissible because: (1) the video complied substantially with the requirements of section 5(a) of article 38.071 of the code of criminal procedure, *see* Tex. Code Crim. Proc. Ann. art. 38.071, § 5(a) (Vernon 2005); (2) the State opened the door to its admission by attacking Curcuru's credibility and bolstering the credibility of A.G. through other witnesses' testimony, *see* Tex. R. Evid. 608(a)(2); and (3) it contained a prior inconsistent statement by A.G. necessary to demonstrate recent fabrication or improper influence or motive of the State's witnesses. S*ee* Tex. R. Evid. 801(e)(1)(a), (e)(2).

As noted by Curcuru in his appellate brief, to successfully argue on appeal that a trial court erred in an evidentiary determination, the appellant must first show that he preserved the error by stating the grounds for the ruling that he "sought from the trial court with sufficient specificity to make the trial court aware of the complaint." Tex. R. App. P. 33.1(a)(1)(A). When, as here, the ruling is one excluding evidence, "it is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible." *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005); *see Willover v. State*, 70 S.W.3d 841, 845-46 (Tex. Crim. App. 2002) (holding that it is the responsibility of the proponent of the evidence to identify the rule under which the offered evidence is admissible); *Clarke v. State*, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994) (holding that the appellant must have

clearly and expressly offered the evidence at trial for the purpose he now claims on appeal). Our review of a trial court's exclusion of evidence is an abuse of discretion standard. *See Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006).

With regard to his first argument—that the video was admissible under article 38.071 of the code of criminal procedure—we note that Curcuru never expressly urged this argument as a basis for admission of the video. *See Clarke*, 881 S.W.2d at 694. However, it is apparent from the record that the trial court did consider article 38.071 in its decision to exclude the video from evidence. So, in the interest of justice, we cannot conclude that Curcuru failed to preserve this argument because the trial court was aware of this potential basis for admission, and we will therefore address it on appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A).[6]

Under section 5(a) of article 38.071, "the recording of an oral statement of the child made before a complaint has been filed or an indictment returned is admissible into evidence if," in relevant part, "no attorney or peace officer was present when the statement was made . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.071, § 5(a)(1). Here, it is undisputed that Lieutenant Darryl Johnson, a detective with the Port Aransas Police Department, was present during the videotaped interview of A.G. by Jimenez. On

---

[6] With regard to Curcuru's second and third arguments, however, we conclude that Curcuru failed to preserve these bases for the admissibility of the video. The only grounds expressly urged by Curcuru for the admission of the video were that the video contained an admission by a party opponent, contained a statement of present sense impression, and/or was admissible under the rule of optional completeness. Curcuru did not offer the evidence to the trial court on the bases that either the State opened the door or the statement was a prior inconsistent statement. *See Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845-46 (Tex. Crim. App. 2002); *Clarke v. State*, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994). Further, having reviewed the relevant portions of the record, we cannot conclude—as we did with Curcuru's first argued basis—that the trial court independently considered either of these arguments as a basis for admission and was thus otherwise aware of those bases. *See* TEX. R. APP. P. 33.1(a)(1)(A). We therefore overrule Curcuru's second issue to the extent that it relies on those two arguments.

17

appeal, Curcuru argues that because Detective Johnson did not play any role in the interview, his presence did not affect the admissibility of the video. The authority he cites does not support this proposition,[7] and we have found no case law binding on this Court supporting this interpretation of the code's requirement that no peace officer be present during the interview. Rather, the plain language of subsection (a)(1) provides that a peace officer's presence during the interview of the child makes the video inadmissible; the code does not qualify this provision depending on the level of the officer's participation. *See id.* Absent any binding authority stating otherwise, we conclude that Detective Johnson's presence at A.G.'s interview made the proffered video inadmissible. The trial court therefore did not abuse its discretion in excluding it. *See Oprean*, 201 S.W.3d at 726. Curcuru's second issue is overruled.

## IV.  EXPERT QUALIFICATION

By his third issue, Curcuru argues that Brian Skop, M.D., the State's expert witness, was not qualified to testify regarding the profiling of sexual predators or pedophiles. Specifically, Curcuru argues that although Dr. Skop may have been qualified to testify regarding insanity issues, he was not qualified as a sexual forensics expert.

We conclude, however, that Curcuru failed to preserve his challenge to Dr. Skop's qualifications for our review. At trial, Curcuru's counsel objected as follows:

---

[7] *Torres v. State*, the case cited by Curcuru, interprets subsection (a)(10) of article 38.071, section 5, which deals with whether the competence of a child witness to testify was established. 33 S.W.3d 252, 256-57 (Tex. Crim. App. 2000); *see* TEX. CODE CRIM. PROC. ANN. art. 38.071, § 5(a)(10) (Vernon Supp. 2010). *Torres* does not involve any issue related to subsection (a)(1), which is the subsection dealing with peace officer presence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.071, § 5(a)(1).

[Prosecutor]: [Dr. Skop,] [l]et's talk a little bit about a sex offender. First of all, a child molester, pedophile-type, are they usually able to fit in well with society?

[Defense counsel]: I'm gonna object. Number one, it's a leading question. I'm gonna object to the testimony of this man, –

[Court]: Overruled.

[Defense counsel]: – as an expert. I'd request a voir dire examination directed to the underlying facts or data upon any opinion that he makes.

[Prosecutor]: Your Honor, we've gone into his expertise and he's been qualified many times before as an expert, and –

[Court]: Yeah, overrule the objection.

[Defense counsel]: Well, Your Honor, we'll make a – an objection Ruvella (ph. sp.) Versus State, Texas Court of Criminal Appeals, also, Your Honor. We don't believe that his opinion is reliable. We don't believe the underlying scientific theories are valid. We don't believe the theories are valid. We don't believe that the techniques are going to be properly applied. But we'll reserve our – the rest of our objections to testimony.

[Prosecutor]: I don't think we need to (mumbling) –

[Court reporter]: I'm sorry?

[Prosecutor]: I – I don't think we need to go into techniques of –

[Defense counsel]: Okay.

[Prosecutor]: – theories, –

[Defense counsel]: Okay.

[Prosecutor]: – but he's certainly been qualified as an expert.

[Court]: Okay. You may proceed.

[Defense counsel]: I'm gonna object. An expert regarding what?

19

| | |
|---|---|
| [Prosecutor]: | Forensic psychiatry, sex offenders, victimization, defendants. |
| [Defense counsel]: | I don't think the – I don't think that this expert's testimony is gonna be of – of any weight to help the jury, Your Honor. |
| [Court]: | Objection's overruled. [Prosecutor], you may proceed.[8] |

To preserve error for appellate review, the complaining party must make a timely and specific objection at the earliest possible opportunity. *See* TEX. R. APP. P. 33.1(a). "A specific objection regarding expert testimony must detail the particular deficiency in the expert's qualifications or the reliability of the expert's opinions." *Acevedo v. State*, 255 S.W.3d 162, 167 (Tex. App.–San Antonio 2008, pet. ref'd) (citing *Chisum v. State*, 988 S.W.2d 244, 250 (Tex. App.–Texarkana 1998, pet. ref'd)). Here, Curcuru objected only on the basis of reliability (i.e., underlying theories and techniques) and relevance (i.e., whether testimony will be helpful to jury).[9] He did not timely and specifically object to Dr. Skop's qualifications. Curcuru, therefore, failed to preserve this complaint for our review. *See* TEX. R. APP. P. 33.1(a); *Acevedo*, 255 S.W.3d at 167; *see also Manzanares v. State*, No. 13-06-00307-CR, 2008 WL 5608261, at *4 (Tex. App.–Corpus Christi Apr. 29, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that appellant failed to

---

[8] Dr. Skop then proceeded to testify about, among other things, the following social and personal behaviors of child molesters: they can fit in well in society; they target what they perceive as vulnerable families; they engage in certain types of sex acts with children when their adult partners will not engage in that type of sex; and they often have apparently close and loving relationships with their victims.

[9] To the extent that Curcuru challenges the reliability and/or relevance of Dr. Skop's testimony on appeal, we conclude he has inadequately briefed this portion of his third issue. He provides no relevant analysis or cites to the record, making, instead, only bare assertions that the trial court failed to make various "affirmative finding[s]" in this regard. As such, we are unable to discern his argument on appeal, if any, regarding reliability or relevance. *See* TEX. R. APP. P. 38.1(i) (requiring the appellant to provide "a clear and concise argument for the contentions made").

preserve complaint that expert's testimony was unreliable where he only objected to the expert's qualifications at trial); *Mosley v. State*, Nos. 07-02-00178-CR, 07-02-00179-CR, 2003 WL 21919261, at *8 (Tex. App.–Amarillo Aug. 12, 2003, pet. ref'd) (mem. op., not designated for publication) (holding that appellant waived his right to complain on appeal that chemist was not qualified to render opinion on weight of drugs where appellant only objected on ground that prosecutor's questions were leading). Curcuru's third issue is overruled.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

By his fourth and final issue, Curcuru complains that he received ineffective assistance of counsel. Specifically, Curcuru argues that his trial counsel: (1) was generally unprepared; (2) failed to preserve certain issues for appeal, several of which we addressed in his appellate issues above; (3) failed to wage a "battle of the experts" in which the testimony of Dr. Skop and the State's other experts could have been countered; (4) failed to adequately cross-examine certain witnesses at trial; (5) failed to admit certain evidence; and (6) failed to obtain the testimony of favorable witnesses who were available but not approached to testify at trial.

### A. Procedural Background: The Motion for New Trial and Affidavits

Curcuru filed a motion for new trial on November 20, 2008, within thirty days of October 21, 2008, the day of his sentencing. *See* TEX. R. APP. P. 21.4(a) ("The defendant may file a motion for new trial before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open court."). The motion included various arguments that Curcuru received ineffective assistance of counsel,

including all of the arguments he makes now on appeal. The motion did not, however, contain any supporting affidavits or other proof for the several arguments based on matters outside the trial record. *See Klapesky v. State*, 256 S.W.3d 442, 454 (Tex. App.–San Antonio 2008, pet. ref'd) ("Although it is not specifically required by statute or the [rules] that a motion for new trial be supported by an affidavit, Texas courts . . . have long held that when the grounds for a new trial are outside the record, a defendant must support his motion by his own affidavit or by the affidavit of someone with knowledge of the facts.") (citing *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); *McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985); *Bearden v. State*, 648 S.W.2d 688, 690 (Tex. Crim. App. 1983)) (other citations omitted). On December 11, 2008, Curcuru filed an amended motion for new trial, and on December 18, 2008, Curcuru filed a motion for leave to amend his new trial motion, to which he attached affidavits in support of his various ineffective assistance of counsel arguments. Both the amended motions and affidavits were filed outside the thirty-day period prescribed by rule 21.4. *See* TEX. R. APP. P. 21.4(a)-(b).

On December 19, 2008, the parties appeared before the trial court to argue the motion for new trial. At this proceeding, Curcuru asked the trial court to consider his affidavits filed with the court on the previous day, but the State objected to the trial court's consideration of both the amended motion and the affidavits. The trial court refused to consider either the amended motion for new trial or the affidavits or to hear any other evidence and then denied Curcuru's original motion for new trial. At the conclusion of this proceeding, the trial court allowed Curcuru to submit the affidavits "for appellate

22

purposes," and the affidavits therefore appear in the record before us.   Curcuru has not, however, challenged on appeal the trial court's refusal to consider the affidavits or hear other evidence at the proceeding.

On appeal, Curcuru extensively cites the affidavits as support for his various ineffective assistance of counsel arguments, in particular, his arguments on matters outside the record.   A threshold question, then, is whether we may consider those affidavits in our resolution of Curcuru's ineffective assistance issue.   Because Curcuru brings no issue before this Court challenging the trial court's refusal to consider those affidavits and because, ultimately, the trial court did not err in so refusing, we conclude that we may not.

It is true that Curcuru's original motion for new trial was timely.   However, to the extent that motion raised matters not determinable from the trial record, it was required to be supported by sworn proof of some kind.   *See Klapesky*, 256 S.W.3d at 454 ("A motion for new trial alleging facts outside the record without supporting affidavits is not a proper pleading and is defective . . . .") (citations omitted).   Curcuru did not supplement his motion with supporting affidavits until well after the thirty-day deadline had passed. "Filing affidavits in support of a motion for new trial more than 30 days after sentencing is considered an untimely attempt to amend the motion."   *See id.* at 455 (citing *Dugard v. State*, 688 S.W.2d 524, 529-30 (Tex. Crim. App. 1985), *overruled on other grounds by*, *Williams v. State*, 780 S.W.2d 802, 803 (Tex. Crim. App. 1989)) (other citations omitted). And because the State objected to the trial court's consideration of the affidavits and

23

amended motion, neither the trial court nor this Court may consider them.[10] *See State v. Moore*, 225 S.W.3d 556, 570 (Tex. Crim. App. 2007) (holding that, if the State objects to an untimely amended motion for new trial, the trial court and appellate court should consider only the original motion and any timely amendment). We therefore analyze Curcuru's ineffective assistance of counsel claims based only on the trial record.

## B. Standard of Review and Applicable Law

We apply the two-pronged *Strickland* analysis to determine whether counsel's representation was so deficient that it violated a defendant's constitutional right to effective assistance of counsel. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.); *see Strickland v. Washington*, 466 U.S. 668, 684 (1984). An appellant claiming a *Strickland* violation must establish that (1) "his attorney's representation fell below an objective standard of reasonableness [deficiency prong], and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different [prejudice prong]." *Jaynes*, 216 S.W.3d at 851; *see Strickland*, 466 U.S. at 687.

As to the deficiency prong, we afford great deference to trial counsel's ability—"an appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance" and that counsel's actions were the result of sound and reasonable trial strategy. *Jaynes*, 216 S.W.3d at 851. A

---

[10] The fact that the trial court allowed Curcuru to submit the affidavits for "appellate purposes"—essentially, as bills of exception, *see* TEX. R. APP. P. 33.2—does not mean that the affidavits are automatically part of the appellate record to be considered by this Court in reviewing the merits of Curcuru's ineffective assistance issue. Before we would be able to consider the affidavits, Curcuru would have to challenge the action of the trial court that led to the exclusion of those affidavits, a challenge he has made neither on appeal nor in the trial court.

24

reasonable probability of prejudice is one that is "sufficient to undermine confidence in the outcome," and a lawyer's deficient performance must undercut the "proper functioning of the adversarial process" such that the result of the trial cannot be reliable. *Mallett v. State*, 65 S.W.3d 59, 62 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812-813 (Tex. Crim. App. 1999).

The appellant must prove both elements of the *Strickland* test by a preponderance of the evidence. *Munoz v. State*, 24 S.W.3d 427, 434 (Tex. App.–Corpus Christi 2000, no pet.). Typically, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of effective assistance. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).[11]

## C. Analysis

Curcuru asserts what we have re-grouped and construed as six general grounds supporting his ineffective assistance of counsel claim.

## 1. General unpreparedness

First, Curcuru argues that his trial counsel was unprepared for trial, alleging that

---

[11] In this case, Curcuru filed a motion for new trial, and the trial court heard argument on the motion. However, at the proceeding, as previously discussed, the trial court ultimately considered no evidence in its determination to deny Curcuru's motion for new trial. For our purposes in determining the standard of review, then, we conclude that it is not necessary to apply the line of cases construing ineffective assistance issues as challenges to the trial court's denial of the appellant's motion for new trial. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded by rule on other grounds by*, *State v. Herndon*, 215 S.W.3d 901 (Tex. Crim. App. 2007) (setting out evidentiary standards for reviewing ineffective assistance issues when there has been motion for new trial hearing with evidence); *Shanklin v. State*, 190 S.W.3d 154, 158-59 (Tex. App.–Houston [1st Dist.] 2005), *pet. dism'd*, 211 S.W.3d 315 (Tex. Crim. App. 2007) (reviewing the *Strickland* analysis through an abuse of discretion standard and viewing the evidence in the light most favorable to the ruling); *see also Delgado v. State*, No. 13-09-00300-CR, 2010 WL 3279488, at *2 (Tex. App.–Corpus Christi Aug. 19, 2010, no pet.) (mem. op., not designated for publication) (same). In those cases, the reviewing court considers the evidence considered by the trial court at the motion for new trial hearing. Because no such evidence was considered here, those evidence-dependent standards of review are not necessary to our resolution of the case, and we need not construe Curcuru's ineffective assistance issue as a challenge to the denial of the motion for new trial in order to reach that evidence.

counsel only began to call potential witnesses on the Sunday before the Monday start of Curcuru's jury trial. However, this argument is based on matters not determinable from the trial record, and because we have no evidence before us concerning anything outside the trial record, we cannot conclude that Curcuru has proven this deficiency allegation by a preponderance of the evidence. *See id.* at 110-11; *Munoz*, 24 S.W.3d at 434.

Curcuru also argues that trial counsel was unprepared because, prior to trial, he failed to adequately test the foundation for the State's expert testimony through voir dire or object to the State's alleged failure to deliver all expert material. Curcuru argues that although trial counsel "filed a motion to voir dire the State's expert witnesses prior to testimony" and "filed an Amended Motion for Discovery request[ing] expert witnesses['] curriculum vitae," trial counsel "never followed through and obtained these crucial documents and never took advantage of his ability to voir dire the experts." The record here does not provide explanations for trial counsel's actions, however, and as such, we conclude that Curcuru has failed to overcome the presumption that trial counsel's performance was reasonably sufficient with regard to this particular argument. *See Jaynes*, 216 S.W.3d at 851.

## 2. Failure to preserve certain errors

Curcuru next argues that we should consider as prejudicial deficiencies any actions or omissions by trial counsel that this Court found "to be contributory" to the failure of any of Curcuru's foregoing three appellate issues. In other words, if we concluded that trial counsel failed to preserve and/or waived any of the foregoing issues, Curcuru asserts that this constituted ineffective assistance. We found three such instances.

First, we concluded that trial counsel failed to object to the testimony of C.M. on the grounds that the State failed to give timely notice under rule of evidence 404(b).[12] In that issue, Curcuru asserted that the State first notified him in writing of C.M.'s potential testimony on October 6, 2008, which was the first day of voir dire. Citing *McDonald v. State*, Curcuru argued that he was entitled to rely on the representations in the State's written notices and that the State's only written notice of C.M.'s testimony on October 6 was too late to comply with the rule. *See* 179 S.W.3d 571, 577 (Tex. Crim. App. 2005) (holding that "the State submitted documents that purported to consist of its notice of intent to offer acts of uncharged misconduct" and the "appellant was entitled to rely upon the State's notices and to assume that these acts were the *only* ones that the State intended to offer").

Even assuming that the complaint was preserved and the trial court erred in admitting the evidence because of lack of notice, however, we conclude that the error was harmless. When an alleged error concerns a lack of notice, the presence of harm depends on whether the appellant was surprised by the evidence. *See Hernandez v. State*, 176 S.W.3d 821, 825-26 (Tex. Crim. App. 2005); *see also Sharp v. State*, 210 S.W.3d 835, 839 (Tex. App.–Amarillo 2006, no pet.). Here, Curcuru does not argue on appeal that he was surprised by the evidence; his harm argument focuses only on the harm of admitting extraneous misconduct evidence for purposes of proving actions in conformity with those propensities. For that reason, this issue provides the Court with no

---

[12] *See supra* Part II.B.

27

basis to reverse the conviction.[13]  *See Sharp*, 210 S.W.3d at 839-40.

Second, in Curcuru's second appellate issue, we noted that trial counsel failed to urge as grounds for admissibility of A.G.'s videotaped interview that the State opened the door to its admission or that the video contained a prior inconsistent statement.[14] Because trial counsel failed to urge these grounds, we concluded that he failed to preserve those arguments as bases for the admissibility of the video.  *See Reyna*, 168 S.W.3d at 177; *see also Willover*, 70 S.W.3d at 845-46; *Clarke*, 881 S.W.3d at 694. However, we also concluded the video was ultimately inadmissible because a peace officer was present during the interview.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.071, § 5(a).  Therefore, Curcuru has not demonstrated that this omission by trial counsel prejudiced him at trial.  *See Jaynes*, 216 S.W.3d at 851.

Finally, in Curcuru's third appellate issue, we concluded that trial counsel failed to preserve Curcuru's challenge to the qualifications of Dr. Skop.[15]  In that issue, Curcuru argued that Dr. Skop was not qualified to testify regarding the profiling of sexual predators or pedophiles.  Even if trial counsel had preserved the issue, however, we conclude that the trial court did not err in allowing Dr. Skop to testify because the State adequately established Dr. Skop's qualifications.

---

[13] Further, *McDonald v. State*, the case relied upon by Curcuru, is distinguishable.  179 S.W.3d 571 (Tex. Crim. App. 2005).  In *McDonald*, the court of criminal appeals found reversible error for two reasons.  *Id.* at 577.  First, the State represented that its written notice was the only notice on which the defendant should rely.  *Id.*  Second, the appellant disputed the State's claim that he had actual notice of the extraneous misconduct testimony.  *Id.*  Here, having reviewed the records of the pre-trial proceedings, we cannot conclude that the State represented its written notices as the only notices upon which Curcuru should rely.  Moreover, it is apparent from the record that Curcuru and his counsel had notice of the potential testimony by C.M., and Curcuru does not dispute that actual notice on appeal.  We are therefore not persuaded that *McDonald* controls the resolution of Curcuru's notice argument.

[14] *See supra* note 6 and accompanying text.

[15] *See supra* Part IV.

Determining an expert's qualification is a two-step inquiry. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2008). First, a witness must have a sufficient background in the relevant field. *Id.* Second, that background must relate to the very matter on which the witness is to give an opinion. *Id.* With regard to the second step, in particular, the trial court should focus on the "fit" between the subject matter at issue and the expert's familiarity with that subject matter. *Id.* at 132.

"'Because the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case,'" and we will not disturb the court's ruling in that regard unless an abuse of that discretion is shown. *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010) (quoting *Rodgers v. State*, 205 S.W.3d 525, 527-28 (Tex. Crim. App. 2006)). "For this reason, appellate courts rarely disturb the trial court's determination that a specific witness is or is not qualified to testify as an expert." *Rodgers*, 205 S.W.3d at 528 n.9 (citing *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000)).

Here, in relevant part, the State attempted to develop Dr. Skop's qualifications in the following exchange:

[Prosecutor]:      And what is your occupation?

[Dr. Skop]:        I'm a psychiatrist[.]

                  . . . .

[Prosecutor]:      Okay.   How long have you been a psychiatrist?

[Dr. Skop]:        I finished my residency in 1996, so, 12 years.

29

[Prosecutor]:      And let's talk about your educational background. Would you, please, share with the jury where you attended school.

[Dr. Skop]:        Yes.  I went to college at Duke University and got a degree in mathematics, there.   Then I went to medical school at Washington University in St. Louis.   After that I did my psychiatry residency at Wilford Hall, which is the Air Force – Air Force's biggest hospital, in San Antonio, Texas.

[Prosecutor]:      Okay.   And is there any type of psychiatry that you are most interested in?

[Dr. Skop]:        Yes.   I'm Board Certified in Forensic Psychiatry, which is the area of psychiatry that studies the legal ramifications of psychiatric illnesses, both criminal and civil.

[Prosecutor]:      Have you testified before as an expert in a court of law?

[Dr. Skop]:        Yes, I have.

[Prosecutor]:      Has that been on few or many occasions?

[Dr. Skop]:        It's been on many occasions.   I do consultations through the Bexar County Courts, and I probably do, I would guess, 30 to 40 percent of their psychiatric evaluations that are court-ordered.   So I testify, I would say, probably, about 75 times a year.

[Prosecutor]:      Okay.   Now, the courts will appoint you to evaluate a defendant?

[Dr. Skop]:        Yes.   I – I – the principle [sic] work that I get, the majority of it is court-appointed, where the judge – or one of the lawyers approaches the judge and asks for either a competency or sanity evaluation and I get ordered by the Court to do that.   Some of the cases I get appointed by the defense attorneys themselves and other times I get appointed by the prosecutor.

30

| [Prosecutor]: | So do you evaluate defendants, also, on whether they're competent or whether they're sane or insane? |
|---|---|
| [Dr. Skop]: | Yes, that's the majority of work I do, in addition to looking at mitigating issues that may – which are psychiatric conditions a person may have that may come into play with their legal charges, but maybe not rise at the threshold of being insane. |
| | . . . . |
| [Prosecutor]: | Okay. All right. Are you familiar with sex offenders? |
| [Dr. Skop]: | Yes, I am. |
| [Prosecutor]: | Is that part of your work as a psychiatrist? |
| [Dr. Skop]: | It's part of my work as both a psychiatrist and a forensic psychiatrist. |
| [Prosecutor]: | Okay. And are you familiar both with victims of sexual abuse and with offenders of sexual abuse? |
| [Dr. Skop]: | Yes, I am. |
| [Prosecutor]: | And have you dealt with this area on few or many occasions? |
| [Dr. Skop]: | Many occasions. |
| [Prosecutor]: | Let's talk a little bit about a sex offender. First of all, a child molester, pedophile-type, are they usually able to fit in well with society? |

At this point, Curcuru's counsel objected on the basis of reliability and relevance, and the trial court overruled the objection.

We believe that the prosecutor adequately showed Dr. Skop's qualifications by establishing his professional and educational background, that he was familiar with sex offenders and their victims, and that he worked with sex offenders and victims in his

practice. In other words, she demonstrated his background in the relevant field and that his experience fit the matter about which he was going to testify—i.e., the habits and characteristics of sex offenders. *See Vela*, 209 S.W.3d at 131-32. Given the high level of deference we show to trial courts in determining the qualifications of expert witnesses, we cannot conclude that the trial court abused its discretion in admitting the testimony of Dr. Skop. *See Davis*, 313 S.W.3d at 350; *Rodgers*, 205 S.W.3d at 527-28 & n.9 Because Dr. Skop's qualifications were established, Curcuru has failed to demonstrate how any deficiency by trial counsel in failing to object affected the outcome of his trial. *See Jaynes*, 216 S.W.3d at 851.

### 3. "Battle of the Experts"

Curcuru next argues that trial counsel was deficient for failing to wage a "battle of the experts" to counter the testimonies of Dr. Skop and the sexual assault nurse examiner and forensic pediatrician who interviewed and examined A.G. at the hospital. Curcuru asserts that trial counsel had advance notice of this testimony and therefore sufficient time to find a competing expert.[16] Curcuru also asserts that he arranged for a particular expert to testify as part of the defense case but that trial counsel did not make use of that expert. Finally, Curcuru asserts that the expert testimony of Dr. Skop, in particular, was critical to the jurors in their determination.

We first note that, in support of his assertions that trial counsel did not make use of an expert provided to him by Curcuru and that Dr. Skop's testimony was critical to certain juror's decisions, Curcuru cites affidavits we cannot consider. *See Moore*, 225 S.W.3d

---

[16] We note that this assertion seems to contradict Curcuru's earlier claim that the State did not provide all expert materials to trial counsel prior to trial. *See supra* Part V.C.1.

32

at 570; *Klapesky*, 256 S.W.3d at 455. As such, those arguments are based on matters not determinable from the record before us, we conclude that Curcuru has failed to prove them by a preponderance of the evidence. *See Munoz*, 24 S.W.3d at 434. With regard to Curcuru's assertion that trial counsel was deficient because he had advance notice of all of the State's expert testimony but chose to not call a competing expert, we conclude that the record is silent as to trial counsel's decision-making and trial strategy, and Curcuru has failed to rebut the presumption that trial counsel provided reasonably professional assistance with regard to his expert witness decisions. *See Rylander*, 101 S.W.3d at 110-11; *Jaynes*, 216 S.W.3d at 851.

## 4. Inadequate cross-examination of certain witnesses

Next, Curcuru argues that his trial counsel failed to adequately cross-examine the following witnesses at trial: E.F., A.G.'s mother; Dr. Skop; H.T., C.M.'s mother; and Susan Dobie, the CPS agent who responded to a tip that A.G. was being abused in Port Aransas, Texas.

With regard to E.F., Curcuru argues that trial counsel failed to sufficiently attack E.F.'s credibility by using transcripts of E.F.'s sworn testimony from A.G.'s CPS removal proceedings that he alleges was inconsistent with her testimony at trial. Curcuru provides no record cites to these transcripts and, in our review of the record, neither have we found the transcripts to which he refers in his brief. Without this evidence, we cannot conclude that Curcuru has proven this alleged deficiency by a preponderance of the evidence, and we are therefore unpersuaded by this argument. *See Munoz*, 24 S.W.3d at 434.

33

With regard to Dr. Skop, Curcuru argues that trial counsel did not adequately cross-examine him about A.G.'s alleged regressive behavior. Various witnesses at trial testified that, although A.G. was potty-trained and could speak in complete sentences in the earlier part of 2007, by October 2007, when the abuse was allegedly occurring, A.G. needed diapers and could not communicate coherently. Curcuru argues that trial counsel should have pressed Dr. Skop about E.F.'s alleged physical abuse of A.G. and how this could have contributed to the regression in A.G.'s behavior. Without any evidence in the record regarding trial counsel's strategies and decision-making, however, we cannot conclude that Curcuru has rebutted the presumption that trial counsel's questioning of Dr. Skop was reasonable and professional. *See Jaynes*, 216 S.W.3d at 851. Regardless, Curcuru has failed to demonstrate that, if trial counsel's questioning of Dr. Skop was deficient, it prejudiced the outcome of the trial. *See id.*; *see also Strickland*, 466 U.S. at 687.

With regard to H.T., Curcuru argues that trial counsel failed to adequately test her credibility as a witness by introducing a prior police statement, CPS records, and medical records for C.M. that all contained prior inconsistent statements by H.T. Neither the police statement nor the medical records appear in the record before us, and in his brief, Curcuru does not detail or explain the contents of those documents and how they would have affected H.T.'s credibility. *See* Tex. R. App. P. 38.1(i). Without that information, we cannot conclude that Curcuru was prejudiced by trial counsel's failure, if any, to admit these documents. *See Rylander*, 101 S.W.3d at 110-11. And although C.M.'s CPS records do appear in the record as a bill of exception, *see* Tex. R. App. P. 33.2, Curcuru

34

has similarly failed to explain how the contents of those records would have damaged H.T.'s credibility, *see* TEX. R. APP. P. 38.1(i), much less demonstrate how the admittance of the CPS records would have affected the outcome of his trial. *See Jaynes*, 216 S.W.3d at 851. We further note that because the record does not provide any explanations for trial counsel's actions, Curcuru has not rebutted the presumption of reasonable professional assistance with regard to the questioning of H.T. *See id.*; *see also Mallett*, 65 S.W.3d at 63 (holding that a silent record that provides no explanation of counsel's actions will not overcome the strong presumption of reasonable assistance); *Thompson*, 9 S.W.3d at 813-14 (same).

Finally, with regard to Dobie, Curcuru argues that trial counsel failed to adequately test her credibility. Dobie was the CPS agent who responded to a call from Curcuru's employer in Port Aransas regarding possible abuse of A.G. Dobie testified that when she went to E.F's apartment to investigate, she took pictures of injuries to A.G. but lost the memory card on which those pictures were stored. Curcuru argues that trial counsel should have pressed Dobie about this lost memory card in order to damage her credibility. However, because the record is silent as to trial counsel's strategies, we, again, cannot conclude that Curcuru has rebutted the presumption that trial counsel's questioning of Dobie was sufficient performance. *See Mallett*, 65 S.W.3d at 63. To conclude otherwise would be pure speculation. Moreover, and again, even if trial counsel's questioning of Dobie was deficient, Curcuru has failed to demonstrate that questioning Dobie further about the lost memory card would have affected the outcome of the trial. He has therefore failed to demonstrate prejudice. *See Jaynes*, 216 S.W.3d at 851.

35

**5. Failure to admit certain evidence at trial**

Curcuru next argues that trial counsel was deficient for failing to admit the following evidence at trial: A.G.'s videotaped forensic interview with Jimenez,; and results from the DNA test performed on A.G. at the hospital.

We have already concluded that the video of Jimenez's interview of A.G. was inadmissible because a police officer was present. Thus, we cannot conclude that trial counsel's performance was deficient in failing to further pursue admitting the video into evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.071, § 5(a).

With regard to the DNA testing records, Curcuru argues that the results were never introduced by trial counsel, and because they were negative, the records would have been "critical" to the jury "in concluding that [Curcuru] did not perpetrate this offense." We first note that the actual DNA records do not appear in the record before us so we cannot verify that Curcuru's representations are accurate. Regardless, at trial, there was testimony about the DNA test results in which it was communicated to the jury that the results did not "positive[ly] identif[y]" anyone as the perpetrator. Because the jury was presented with evidence that the DNA results were negative, we cannot conclude that the admission of the actual records would have affected the outcome of the trial. *See Jaynes*, 216 S.W.3d at 851.

**6. Failure to obtain testimony from certain favorable witnesses**

Finally, Curcuru argues that trial counsel was ineffective for failing to secure the following witnesses who would have allegedly testified favorably at trial: Shelly Martin, a woman Curcuru dated who had small children and would have testified that nothing

36

unusual happened when Curcuru was around her children; Jennifer Greene, a friend of DeBord's who would have testified that DeBord's mother was forcing her to testify against Curcuru; and employees from the tattoo shop where Curcuru worked, who would have testified about Curcuru's schedule leading up to the date of the offense and which testimony would have disproved one of the State's theories that Curcuru had exclusive access to A.G. in the days leading up to the alleged date of the assault.

Although Curcuru cites to affidavits that purport to verify this testimony, we are unable to consider that evidence. *See Moore*, 225 S.W.3d at 570; *Klapesky*, 256 S.W.3d at 455. So, again, looking only at the record before us, which is silent as to the foregoing potential witnesses, we cannot conclude that Curcuru has proved this alleged deficiency by a preponderance of evidence. *See Munoz*, 24 S.W.3d at 434. And absent any testimony or other evidence from trial counsel, we furthermore cannot conclude that Curcuru has rebutted the presumption that trial counsel's decision not to call these witnesses was sound trial strategy. *See Mallett*, 65 S.W.3d at 63; *Jaynes*, 216 S.W.3d at 851. We are therefore unpersuaded by this argument.

## 7. Summary

Curcuru has failed to demonstrate that his trial counsel's performance was deficient or, even if it were, that but for any deficiency, the outcome of his trial would have been different. *See Strickland*, 466 U.S. at 684, 687. Curcuru's fourth issue is overruled.

## VI. CONCLUSION

Having overruled all of Curcuru's issues, we affirm his conviction.


NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 9th
day of December, 2010.